United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 2, 2004**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

———————————————

No. 03-20953

———————————————

HAROLD A. KERGOSIEN, JOSEPH J. HLAVINKA;
RAFAEL J. COLACO; HANK O. AUSTIN; VANCE
W. MEISCHEN; SAMUEL W. BAXTER; PATRICK E.
PRYOR; JASON K. BUTLER; PAUL L. SCIVALLY;
KEVIN W. CAMPBELL; BRUCE L. SINER; F. DALE
CORBELLO; TERRY L. SOWELL; ALAN G. DANIELS;
DANIEL J. THOMAS; CLAY W. EDMONDS; KATHY G.
THOMPSON; JOHN C. JUAREZ; ROY T. VAN VACTOR,
JR.; A. ROBERT MAY, JR.; STEVEN C. WEAVER;
DARYL W. MORRIS; KYLE E. WITHERSPOON,

                                        Plaintiffs-Appellants,

                        versus

OCEAN ENERGY, INC.,

                                        Defendant-Appellee.

_____

Appeal from United States District Court
for the Southern District of Texas

_____

Before KING, Chief Judge, BARKSDALE, and PICKERING, Circuit Judges.

PICKERING, Circuit Judge.

This is an appeal from the district court's vacatur of an arbitration award. Finding that the

district court improperly vacated the award, we reverse and remand with instructions to reinstate

the arbitration award in favor of the Plaintiffs-Appellants.

FACTUAL BACKGROUND

Plaintiffs-Appellants are twenty-three individuals who were employees of Seagull Energy.

The Plaintiffs comprised virtually all of the employees of the Operations and Construction Group ("O&C Group"), a division of Seagull. This division provided maintenance, repair, regulatory support and other services connected with operating pipelines for various client chemical companies of Seagull. Seagull had adopted a Management Stability Plan (the "Plan") in 1995 which provided that employees involuntarily terminated within two years after a "change in control," such as a merger, would receive specified severance benefits. All parties agree that the Plan is an ERISA plan. However, this ERISA plan had a somewhat different twist. It provided that disputes under the Plan should be submitted to arbitration, but the arbitrator's standard of review of the Committee's decision on benefits would be "the standard of review which would be used by a Federal court in reviewing such decision under the provisions of ERISA."

Federal law on arbitration is firmly and clearly established. ERISA, a newer federal law, that preempts much state law, is likewise firmly established in a number of areas. Both the plan administrator under ERISA and the arbitrator under the Federal Arbitration Act ("FAA") are generally entitled to considerable deference in their decision making. By electing to send this case to arbitration, and then appealing the arbitrator's decision to federal court, defendant has presented this Court with the responsibility of reviewing, under firmly established arbitration law, a decision of an arbitrator who had the responsibility of interpreting an ERISA plan under federal ERISA law.

In the Fall of 1998, Seagull officials began talking openly to its employees (including Plaintiffs) about the possibility of layoffs in connection with a company downsizing as well as possible mergers. Then, on November 24, 1998, Seagull announced a merger with Ocean Energy, Inc., with Ocean being the surviving entity. Shortly after this announcement, Seagull

2

principals began meeting with Buckeye Pipeline ("Buckeye") to discuss the possibility of a separate acquisition of the O&C Group by Buckeye rather than to take the O&C business into the merger with Ocean. Seagull ultimately made the decision to sell the O&C Group to Buckeye.

Plaintiffs argue that the O&C employees were an important consideration in the sale because the assignment of any O&C contracts to Buckeye required the consent of the customers. Plaintiffs assert that the customers were interested in and had purchased the services that O&C personnel could provide with little concern for the hard assets utilized in completing the work. Therefore, ensuring that the O&C employees were "on board" for any sale of the O&C Group was critical in completing the sale.

In an effort to reassure O&C personnel as to their job security, and to keep these employees working for Seagull while Seagull obtained the necessary consents from its customers, on January 5, 1999, Seagull's CFO, William L. Transier, sent a memo to the O&C personnel stating that as to any employee terminated prior to the merger in a reduction in force and any employee terminated after the merger, Plan benefits would be available. The memo also stated that the merger would constitute a "change in control" which would trigger the payment of Plan severance benefits. The memo concluded, "*we will continue to communicate with you regarding decisions affecting you and the future of your position at Seagull.*"  (Emphasis added.)  There was a Summary Plan Description attached to the memo which further provided:

> . . . if you obtain new employment while you are receiving benefit payments under the Plan, your severance *benefits will not be reduced by your compensation or benefits earned with your new employer*.

(Emphasis added.)

3

The January 5 Transier memo was followed up by a Fourth Amendment to the Plan.[1] This Amendment provided for payment of severance benefits in the event the Seagull/Ocean merger was consummated. It was enacted on January 29, 1999, retroactive to January 1 and provided, in pertinent part:

> Other than with respect to the transactions contemplated by the Agreement and Plan of Merger between Seagull Energy Corporation and Ocean Energy, Inc. (dated as of November 24, 1998), which if consummated, shall constitute a "Change in Control" for all purposes under the Plan, following which severance benefits shall be payable as provided herein, the Plan shall be, and is hereby, terminated.

On or about February 22, 1999, Seagull and Buckeye signed the Purchase and Sale Contract to sell the O&C Group to Buckeye for $5.75 million. The Plaintiffs then spent the month of March securing the necessary customer consents to allow the assignment of the O&C contracts to Buckeye.

The Seagull/Ocean merger was set to close on March 30, 1999. On the evening of March 29, the Seagull Board adopted a Fifth Amendment to the Plan. It provided, in pertinent part:

> . . . that the term 'Involuntary Termination' shall not include a Termination for Cause, a termination of a Covered employee's employment occurring as a result of or in connection with the sale or other divestiture by the Employer of a division, subsidiary, or other business segment . . . if such covered employee is offered continued employment by the acquirer of such business segment immediately upon such sale or divestiture . . ..

Plaintiffs assert that in spite of the January 5 assurances of CFO Transier, Seagull had surreptitiously developed a scheme to keep the O&C personnel working for Seagull during the merger process, but to exclude them from severance benefits under the Plan. In order to accomplish this, they contend that the Company enacted the aforementioned Amendments Four

---

[1] The first three Amendments to the Plan occurred prior to 1999 and have no effect on the issues raised herein.

4

and Five to the Plan, the Fourth Amendment to keep the employees working and affirm the benefits in question and the Fifth Amendment to take away the same benefits. Plaintiffs assert that the Fifth Amendment was specifically designed to prevent them from being entitled to Plan severance benefits by its redefinition of "involuntary termination." In fact, James Hackett, CEO of Seagull admitted that but for the Fifth Amendment, the Plaintiffs would have been entitled to severance benefits under the Plan. Seagull and Ocean officially merged on March 30. On March 31, the Plaintiffs were terminated from Seagull/Ocean and they went to work for Buckeye on April 1.

When the Plaintiffs did not timely receive severance benefits pursuant to the terms of the Plan, they each filed a claim with the Ocean Organization and Compensation Committee (the "Committee"). The primary task of the Committee was to decide executive pay. However, it was also the named fiduciary with the power to administer the Plan and to review claims. It was primarily composed of outside Directors and Senior Ocean executives.

This was the first time the Committee had been called upon to make a decision regarding Plan benefits. The arbitrator's opinion recites that testimony at the arbitration hearing indicated that a packet of information was provided to the members of the Committee, at a called meeting, at which the claims of the twenty-three Plaintiffs were considered. A part of the packet was a denial letter previously drafted by General Counsel, Richard Reeves, who was also the recording secretary for the Committee. The Committee met for one hour and considered twelve items. Plaintiffs' claims were the last item on the agenda and the Committee spent less than five minutes on that item. A denial letter was sent to each Plaintiff and thereafter each exercised his appeal rights under the Plan.

5

The Committee was also designated as the appeals forum. When the appeal of the denial of benefits was brought before the Committee, Reeves was again present and had a prepared response and denial letter which the Committee adopted with little consideration and no changes. Also present was Mr. Ivey, who was ultimately defendant's trial Counsel through the course of this litigation.

Feeling aggrieved, the Plaintiffs filed suit in Texas state district court. Ocean removed to federal court and then moved the district court to compel arbitration. The district court ordered "plaintiffs' claims" to be arbitrated. The parties agreed on an arbitrator and submitted the case. The arbitrator entered a forty-two page opinion awarding the Plaintiffs benefits under the Plan totaling some $1.5 million plus $75,000 attorney fees and 6% pre-award interest and 10% post-award interest.

Ocean then filed an Application to Vacate the award in the district court. Ocean did not file a transcript of the arbitration proceedings nor any of the exhibits submitted to the arbitrator as part of the record for review by the district court. Accordingly, even if it was appropriate to do so, the district court could not have reviewed the factual basis of the arbitrator's findings. The only documents filed supporting the Application to Vacate the arbitrator's award were the Plan, the legal briefs filed with the arbitrator, and the arbitrator's opinion. The only other document found in the record is Exhibit "C" to Plaintiffs' Response to Ocean's Application to Vacate Arbitration Award which is Plaintiffs' Statement of Claim submitted to the arbitrator. This document calls into issue the entire decision making process concerning the fourth and fifth amendments to the Plan as well as the decision to deny benefits. Plaintiffs' Statement of Claim clearly presented to the arbitrator all of the issues decided by the arbitrator. There is no

6

indication, before the court, that defendant objected to any of the issues submitted to arbitration by plaintiffs, until after the arbitrator decided against defendant.

The district court vacated the award, finding that the arbitrator had "exceeded his powers, misunderstood the law, and misread the contract." The district court further wrote "[t]he arbitrator exceeded his power by applying the wrong standard for reviewing the compensation committee's decision."

## THE ISSUES

Plaintiffs have appealed, asserting that the district court improperly applied a *de novo* standard of review ignoring the considerable deference due arbitration awards. Ocean contends here and contended in its Application to Vacate in district court that the arbitrator wrongly took up the breach of fiduciary claim. Ocean also argues that the arbitrator exceeded his powers by reviewing the merits of the Plan and its amendments. Plaintiffs contended that Ocean never disputed the jurisdiction of the arbitrator to resolve all disputes between the parties arising from the Plan until the Application to Vacate was filed. Plaintiffs also point out that it was Ocean that moved to compel arbitration and that it was not until the arbitrator ruled against Ocean that Ocean was heard to complain of the arbitrator's jurisdiction. Ocean contends that the arbitrator both (1) exceeded his power and (2) acted in manifest disregard of the law by not applying, or in misapplying, the correct standard of review, a contention that the district court, at least implicitly, agreed with.

## STANDARD OF REVIEW

This court reviews the district court's decision to vacate an arbitration award under a *de*

7

*novo* standard, *Prestige Ford v. Ford Dealer Computer Services, Inc.*, 324 F.3d 391, 393 (5th Cir.

2003), with an "exceedingly deferential" view of the arbitrator's award. *See Brabham v. A.G.*

*Edwards & Sons, Inc.,* 376 F.3d 377, 380 (5th Cir. 2004) (citing *Glover v. IBP, Inc.*, 334 F.3d

471, 473 (5th Cir 2003)).

"[A] district court's review of an arbitration award is extraordinarily narrow." *Prestige*

*Ford*, 324 F.3d at 393 (quoting *Gateway Technologies, Inc. v. MCI Telecommunications Corp.*,

64 F.3d 993, 996 (5th Cir. 1995)).  In *United Steelworkers of America v. Enterprise Wheel & Car*

*Corp.,* 363 U.S. 593, 598-99, 80 S.Ct. 1358, 1360, 4 L.Ed. 2d 1424 (1960),[2]  the Supreme Court

held:

> Respondent's major argument seems to be that by applying correct principles of law to the interpretation of the Collective Bargaining Agreement it can be determined that the agreement did not so provide, that therefore the arbitrator's decision was not based upon the contract.  The acceptance of this view would require courts even under the standard arbitration clause to review the merits of every construction of the contract.  This plenary review by a court on the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final.  This underlines the fundamental error which we have alluded to in *United Steel Workers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343.  As we there emphasized, the question of interpretation of the collective bargaining agreement is a question for the arbitrator.  *It is the arbitrator's construction which was bargained for*; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different than his.

(Emphasis added.)  If an award is rationally inferable from the facts before the arbitrator, the

award must be affirmed.  *See Antwine v. Prudential Bache Securities, Inc.,* 899 F.2d 410, 412 (5th

---

[2] That case involved §301 of the Labor Relations Management Act, 1947, 29 U.S.C.A. §185(a) and the case before this court involves the FAA, 9 U.S.C.A. §1, et seq.  Nevertheless the courts, in interpreting LRMA cases, have cited to FAA cases and the courts interpreting FAA cases have cited to LMRA cases.  Although there are some distinctions between cases under these two different statutes, none of these distinctions are applicable in the case at hand.

Cir. 1990).

This court has held that "whatever indignation a reviewing court may experience in examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing so." *Prestige Ford*, 324 F.3d at 394 (quoting *Forsythe Intern., S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022 (5th Cir. 1990)). The statutory bases for vacating an arbitration award are set forth in the Federal Arbitration Act at 9 U.S.C.A. §10(a) which provides that an award may be vacated:

> (1) where the award was procured by corruption, fraud or undue means;
> (2) where there is evidence of partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct . . . or any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers . . . .

Besides the four statutory grounds, manifest disregard of the law and contrary to public policy are the only nonstatutory bases recognized by this circuit for vacatur of an arbitration award. *See Prestige Ford,* 324 F.3d at 395, 96, *Brabham*, 376 F.3d at 381-82. *See also, Williams v. CIGNA Financial Advisors, Inc.*, 197 F.3d 752, 762 (5th Cir. 1999), *cert. denied,* 529 U.S. 1099 , 120 S.Ct. 1833 , 146 L.Ed.2d 777 (2000). This court has specifically disavowed arbitrary and capricious as a ground for vacatur. *See Brabham* 376 F.3d at 381-82 . The *Brabham* court also clarified that the "essence test" (the award failed to draw its essence from the contract) is not a separate nonstatutory ground for vacatur but is part and parcel of 9 U.S.C.A. §10(a)(4) of the FAA (the arbitrator exceeded his powers). *Brabham* at 384, n. 8.

This court has referred to the so called "essence test" as "rather metaphysical." *Executone Information Systems, Inc. v. Davis*, 26 F.3d 1314, 1324 (5th Cir. 1994). To draw its essence from the contract, "the award must, in some logical way, be derived from the wording or purpose of

9

the contract." *Id.,* at 325, (quoting *Brotherhood of R.R. Trainmen v. Central of Georgia Ry.*, 415 F.2d 403, 412 (5th Cir. 1969), *cert denied*, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970). Under the essence analysis, "[t]he single question is whether the award, however arrived at, is rationally inferable from the contract." *Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.*, 918 F.2d 1215, 1219, n. 3 (5th Cir. 1990).

The district court vacated the arbitration award on the grounds that the arbitrator (1) exceeded his powers, (2) misunderstood the law, and (3) misread the contract. The only one of these three grounds that is recognized by Fifth Circuit law is that the arbitrator exceeded his powers. It should be observed that the district court concluded that the arbitrator had exceeded his powers because his ruling was contrary to law. The district court seems to have mixed a statutory basis for vacatur (exceeded his powers) with a nonstatutory basis, not recognized by the Fifth Circuit, that is, the arbitrator failed to follow the law. The district court did not appropriately consider Fifth Circuit precedent as to either of these grounds and showed only passing deference to the arbitrator's decision.

Ocean incorrectly asserts that this Circuit recognizes three nonstatutory grounds for vacatur of an arbitration award. Those being, (1) the arbitrator acted in manifest disregard of the law, (2) the award failed to draw its essence from the contract, and (3) the award was arbitrary and capricious. As previously stated, only one of these nonstatutory grounds is recognized by the Fifth Circuit, manifest disregard of the law. Thus the only issues to be considered by this appellate court are did the arbitrator (1) exceed his powers or (2) was his award in manifest disregard of the law? We will address Fifth Circuit law as to these two grounds for the vacatur of an arbitration award.

10

## DID THE ARBITRATOR EXCEED HIS POWERS?

> It is well-settled that the arbitrator's jurisdiction is defined by both the contract containing the arbitration clause and the submission agreement. If the parties go beyond their promise to arbitrate and actually submit an issue to the arbitrator, we look both to the contract *and* the scope of the submissions to the arbitrator to determine the arbitrator's authority.

*Executone*, 26 F.3d at 1323. (citations omitted) (Emphasis in original.)

Here, the contract containing the arbitration clause is the Plan itself, which contains nothing describing the scope of the issues to be arbitrated. It only provides that one having a dispute with the administration of the Plan may submit the matter to mandatory and binding arbitration. Its only limiting factor is that the arbitrator must employ the same standard of review as a federal court considering ERISA.

The district court order granting the motion to compel arbitration provided that "[o]n Ocean Energy's oral motion to compel arbitration, the *plaintiffs' claims* will be arbitrated under the American Arbitration Association's labor rules." (Emphasis added.) The court placed no limitation on the arbitrator. The court order itself was a submission to the arbitrator. Additionally, we know that plaintiffs submitted a Statement of Claim which was broad. Because defendant did not file any of the record before the arbitrator we do not know if defendant submitted any issues to the arbitrator or if defendant objected to any of the issues submitted by the plaintiffs.

In *Valentine Sugars Inc. v. Donau Corp.*, 981 F.2d 210, 213 (5th Cir. 1993), *cert denied*, 509 U.S. 923, 113 S. Ct. 3039, 125 L.Ed.2d 725 (1993), we concluded that language in the demand for arbitration which "asked the panel to arbitrate a dispute concerning a commercial

11

matter involving several contracts . . . gave the arbitrator the power to do whatever was necessary to resolve any disputed matter arising out of the joint venture."  Because the defendant failed to submit the record before the arbitrator to the district court, it is impossible for this reviewing court to determine if the arbitrator exceeded his jurisdiction by deciding issues not submitted to him.

Additionally, in deciding whether the arbitrator exceeded his jurisdiction, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).  In *Waverly Mineral Products Co. v. United Steel Workers of America, AFL-CIO, Local No. 8290*,  633 F.2d 682 (5th Cir. 1980),  the district court determined that the issue before the arbitrator was not amenable to arbitration.  This court reversed and held that the district court had "ignored the strong presumption favoring arbitrability. . . ." *Id*., at 684.  We analyzed previous Fifth Circuit case law and held that arbitration should not be denied  "'unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id*., (citation omitted) (Emphasis added.)  We held that the decision as to whether or not an issue is arbitrable is for the arbitrator to decide "'if the subject matter of the dispute is arguably arbitrable,'" *Id*., (citation omitted), and that courts have no business overruling an arbitrator "'because their interpretation of the contract is different from his.'" *Id.*, (citation omitted).

Based upon Fifth Circuit precedent discussed above, the plaintiffs' Statement of Claim submitted to the arbitrator, and without the record from the arbitration hearing being filed before the district court, and without any other limitation on the issues to be arbitrated, the district court

12

could not have found that the arbitrator exceeded his powers. Hence, any arguments that the arbitrator exceeded his powers by deciding issues not properly before him or that the award is not rationally inferable from the contract are without merit.


### DID THE ARBITRATOR MANIFESTLY DISREGARD THE LAW?

In recognizing manifest disregard of the law as a basis for a vacatur, this court cited the Second Circuit case of *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930 (2[d] Cir. 1986) with approval. *Prestige Ford*, 324 F.3d at 395. Under that formulation, manifest disregard for the law "means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing principle but decides to ignore or pay no attention to it." *Id.*

Even if the arbitrator did manifestly disregard the law, a second step of the manifest disregard analysis requires that before an arbitrator's award can be vacated, the court must find that the award resulted in a "significant injustice." *See Williams*, 197 F.3d at 762. Since we conclude that the arbitrator did not show a manifest disregard for the law, it is unnecessary that we address this issue.

The district court concluded that the arbitrator had exceeded his power and misunderstood or failed to follow the law because the arbitrator found that the Committee decision to deny severance benefits to the Plaintiffs was entitled to little or no deference. Again, this is where the district court mixed a statutory basis for vacatur (exceeded his powers) with a

13

nonstatutory basis, not recognized by the Fifth Circuit as a basis for vacatur. In finding contrary to the arbitrator, the court, in essence, held that the arbitrator had exceeded his powers by failing to follow the law. This court has never affirmed such a holding, but has repeatedly held that the failure of an arbitrator to correctly apply the law is not a basis for setting aside an arbitrator's award. Specifically, we have rejected even arbitrary and capricious as a basis for vacating an arbitration award. *See Brabham, supra.*

The district court agreed with the arbitrator that the Committee was "never independent" but then held that neither the workers nor the arbitrator could "use the compensation committee's dependence and management-affiliation to question the decision to eliminate one class of fired workers from the severance plan." It is true that in the typical ERISA case, where the fiduciary is given discretion to decide benefit claims, such decisions are reviewed to determine whether they are arbitrary and capricious under an abuse of discretion standard. *See Martinez v. Schlumberger, Ltd.*, 338 F.3d 407 (5th Cir. 2003). But the arbitrator clearly recognized this principle and stated specifically that he was employing it.

The arbitrator, but not the district court, recognized that when there is an apparent conflict of interest between the Committee's fiduciary obligations to the Plan participants and the profit motive of the Company, the deference due the decision may be reduced in proportion to the conflict. *See Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 297 (5th Cir. 1999) (*en banc*) ("The existence of a conflict is a factor to be considered in determining whether the administrator abused his discretion in denying a claim."). This was the point on which the

14

arbitrator received both testimony and deposition evidence outside of the administrative record.[3]

Ocean argues that it was error for the arbitrator to go outside the administrative record and allow any additional evidence.

It is true that federal courts are generally prevented from going outside the administrative record in reviewing plan fiduciary decisions. *Vega*, 188 F.3d at 289. Here, however, the parties were not in federal court. They were involved in mandatory arbitration invoked by Ocean. While it is true that the Plan called for the arbitrator to review the Committee decision as a federal court would, we have clearly held that conflict of interest is a factor to be weighed in determining how much deference is given to an administrator's decision. *See Vega, supra*. There is no practical way for the extent of the administrator's conflict of interest to be determined without the arbitrator going beyond the record of the administrator.

In addition to holding that the conflict of interest, if any, of the plan administrator is to be taken into consideration, this court has also held "that an employer, if it chooses to communicate about the future of a participant's plan benefits, has a fiduciary duty to refrain from misrepresentations." *Martinez*, 338 F.3d at 424. Further, "[w]hen an employer *speaks to the future* of a plan, employees are justified in concluding that it is backed by the authority of a plan administrator, and should therefore be entitled to trust in those representations." *Id.,* at 425, (Emphasis added.) Even though *Martinez* was decided subsequent to the arbitrator's award, it is

---

[3] The arbitrator's opinion summarizing the testimony contains a paragraph regarding a stipulation by Counsel for Ocean that the record before the Committee included "whatever personal information these fellows had . . . ." The arbitrator found that the administrative record presented did not reflect what that personal knowledge was or how it played into the decision to deny benefits. The arbitrator obviously concluded that developing a record as to the personal knowledge the Committee members had regarding the Plan and its requirements was important in reaching a decision on the extent of the conflict, if any.

based on Supreme Court precedent argued to and reviewed by the arbitrator. *See Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

The arbitrator concluded that the employer exercised "discretionary authority" in administering the Plan by virtue of the January 5, 1999, communication to the employees and that this triggered a fiduciary obligation to keep the employees informed about future changes to the Plan. R. at 331. Such an exercise of discretionary authority in the administration of the Plan is a fiduciary function specifically enumerated under ERISA. *See Martinez,* 338 F.3d at 425. That fiduciary duty required that the Committee refrain from "knowingly and significantly" deceiving the beneficiaries in order to save the employer money. *Id.,* (quoting *Varity Corp.,* 516 U.S. at 506). The arbitrator reviewed a number of cases, including *Varity*[4], concerning the fiduciary duty of Ocean and concluded that Ocean had breached that duty. Certainly, this does not evidence a manifest disregard for the law.

The arbitrator perused through more than forty cases and voluminous post-hearing briefs in an attempt to apply the correct ERISA standard of review to the Committee's decision to deny severance benefits to the Plaintiffs. The arbitrator found that there was a conflict of interest by Committee members who were also Directors of the company because if the Plan administrator (Committee), had told the employees of the change in the Plan, it could have affected the sale to Buckeye and adversely affected the financial interests of Seagull. The arbitrator also found that the Plan administrator had made a representation to the employees that it would keep them advised, and had failed to do so, and therefore the employer had breached its fiduciary obligation to keep the employees informed of Plan changes. *See Varity,* 516 U.S. at 506, and *Martinez,* 338

---

[4] The parties agree that the arbitrator considered *Varity*.

16

F.3d at 425.

The arbitrator went on to conclude that because of the conflict of interest created by Ocean and the way the Committee was set up, the Committee's denial of the Plaintiffs' claims was entitled to little or no deference. Clearly, the arbitrator was neither ignoring the applicable law nor refusing to apply a settled principal of law. He reviewed the voluminous cases presented by the parties and thoroughly reasoned their application to the facts presented. One might disagree with his conclusions and even his methodology, but that does not reduce the deference that decision is due by the reviewing court. It is obvious that the district court reviewed the arbitrator's award *de novo* rather than under the exceedingly deferential review which it was due.

The district court improperly substituted its judgment for that of the arbitrator. "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 532 U.S. 1015, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) (*citing United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). "If 'an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Id.*, (quoting *Misco* at 38). "[E]ven 'serious error' on the arbitrator's part does not justify overturning his decision, where, . . . he is construing a contract and acting within the scope of his authority." *Id.,* at 510 (quoting *Misco* at 38). "Established law ordinarily precludes a court from resolving the merits of the parties' dispute on the basis of its own factual determinations, no matter how erroneous the arbitrator's decision." *Id*., (citing *Misco* at 40, n. 10). "When an arbitrator resolves disputes

17

regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *Id.,* (quoting *Misco* at 39). "'[C]ourts . . . have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim.'" *Id.,* (quoting *Misco* at 37).

The arbitrator's award in this case is rationally inferable from the Plan. Both parties agree that the Plan anticipated paying benefits to persons involuntarily terminated prior to the last minute adoption of the Fifth Amendment. The arbitrator found that the Company had violated its fiduciary duty to the Plaintiffs in denying their claims. This was within the province of the arbitrator as fact finder and may not be reviewed by the district court simply because the district court disagreed with the arbitrator, but must be reviewed consistent with Fifth Circuit precedent. The parties bargained for arbitration. When one bargains for arbitration, he bargains for the process as well as the results. If Ocean had wanted to have the rigors of a federal court proceeding, it could have had them. Instead, it compelled arbitration and now, dissatisfied with the result, seeks a different outcome.

The lower court erred in vacating this arbitration award, consequently, it is unnecessary to review the remand to another arbitrator.

The district court's order of vacatur is REVERSED and this matter is REMANDED to the district court with instructions to REINSTATE the arbitration award in favor of the Plaintiffs.

18