In re The HERITAGE
ORGANIZATION,
L.L.C., Debtor.

The Heritage Organization,
L.L.C., Plaintiff,

v.

W. Ralph Canada, Jr., Defendant.

v.

Gary M. Kornman, Third–
Party Defendant.

Bankruptcy No. 04–35574–SAF–11.
Adversary No. 04–3338.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

March 8, 2005.

E. Lee Morris, Munsch, Hardt, Kopf and Harr, Dallas, TX, for Dennis S. Faulkner, Chapter 11 Trustee.

Jeffrey M. Tillotson, Lynn, Tillotson & Pinker, Dallas, TX, for Gary M. Kornman, Third–Party Defendant.

Frank Hill, Hill & Gilstrap, P.C., Arlington, TX, for GMK Family Holdings, L.L.P., Counter–Defendant.

David W. Parham, Baker & McKenzie LLP, Dallas, TX, for The Heritage Organization, L.L.C., Debtor.

Jim L. Flegle, Loewinsohn & Flegle, L.L.P., Dallas, TX, John P. Lewis, Jr., Dallas, TX, for Defendant/Third–Party Plaintiff, W. Ralph Canada, Jr.

### MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Chief Judge.

This adversary proceeding involves an arbitration award. Dennis S. Faulkner,

the Chapter 11 trustee of the bankruptcy estate of The Heritage Organization, LLC, the debtor, moves the court to vacate a portion of the award. The debtor, Gary M. Kornman and GMK Family Holdings, L.L.P. ("Holdings"), join in that motion. Holdings had been the managing member of Heritage, and an equity owner of Heritage. Kornman founded Heritage and served as its chief executive. W. Ralph Canada moves the court to enter a judgment based on the award. Separately, Kornman moves the court to enter a judgment in his favor based on the award. The court conducted a hearing on the motions on January 14, 2005.

The determination of a claim against a bankruptcy estate and a counter-claim by the bankruptcy estate constitute core matters over which the court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(B) and (C) and 1334.

**Procedural History**

The Heritage Organization, LLC, employed Canada from March 1995 to July 2002. On March 1, 1995, Heritage and Canada entered a written employment agreement. The agreement contained an arbitration clause. Agreement, § 11. Notwithstanding the arbitration provisions, Heritage retained the right to seek judicial review in a court of competent jurisdiction. Agreement, § 11.2. The agreement applies the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and the corresponding Texas Arbitration Act. Agreement, § 11.5. In July 2002, Canada requested that a dispute be submitted to arbitration. The parties disagreed on the selection of the arbitrators.

On January 15, 2003, Heritage filed a law suit in state court to resolve several preliminary matters. *The Heritage Organization, LLC, v. Canada,* cause no. 03–00426–K, 192nd District Court, Dallas County, Texas. The state court addressed the preliminary matters, appointed three arbitrators, referred the dispute to the arbitrators, and kept the state court proceeding open pending conclusion of the arbitration. The arbitration panel consisted of Honorable Robert Parker, retired Fifth Circuit Judge, former Texas Supreme Court Justice Deborah Hankinson, and former State Court District Judge Glen Ashworth. The arbitration took place before the panel on March 23–26, 2004, in Dallas, Texas.

On April 14, 2004, the arbitrators made their award. They provided that Canada recover $6,161,270.08 from Heritage. On Canada's claims, the panel specifically found: (1) breach of contract (December 1998 oral agreement), no damages; (2) ratification of March 1995 employment agreement for Heritage; (3) breach of contract (deferred compensation) for Heritage; (4) breach of contract (excessive damages) for Canada in part and for Heritage in part, with Canada to recover $114,000 plus pre-judgment interest of $67,509.25; (5) breach of contract (August 2000 oral agreement) for Canada in the amount of $3,413,676.93 plus pre-judgment interest in the amount of $1,680,090.20; (6) breach of contract (accrued fees) for Heritage; (7) fraud for Heritage; (8) breach of duty and fair dealing for Heritage; (9) conversion for Heritage; (10) quantum meruit and unjust enrichment for Heritage; (11) breach of indemnity agreement for Heritage; and (12) attorney's fees for Canada in the amount of $886,000.00.

The panel disallowed all of Canada's claims against Kornman. The panel disallowed Heritage's counter-claims against Canada for breach of contract and attorney's fees. The panel directed Heritage to pay American Arbitration Association fees of $50,144.62 and to pay the arbitrators $139,974.87. Lastly, the panel instructed Heritage to pay Canada $79,994.49 for

Canada's share of amounts previously paid to the American Arbitration Association.

The panel did not provide a written explanation for its decision. The parties apparently agreed that the panel did not need to explain its decision.

The arbitration agreement provided that a judgment may be entered on an award rendered by the arbitrators. Agreement, § 11.7. On April 19, 2004, Canada applied to the state court for an order confirming the arbitration. 9 U.S.C. § 9. Eight days later, on April 27, 2004, the court held an evidentiary hearing. On April 28, 2004, the court entered its order confirming the arbitration award. The order states that the court found no grounds for vacating or modifying the award. Yet, on that same day, April 28, 2004, Heritage filed a motion to vacate a portion of the arbitration award. 9 U.S.C. § 10. Heritage timely filed that motion within ninety days of the arbitration award. 9 U.S.C. § 12. The state court could not have considered Heritage's motion when it entered its order on April 28, 2004.

On May 4, 2004, Canada filed a motion for entry of judgment based on the order confirming the arbitration award. 9 U.S.C. §§ 9, 13. The court set a hearing on the motion for entry of judgment on May 18, 2004. The state court did not set a hearing on the motion to vacate the arbitration award.

On May 17, 2004, Heritage filed a petition for relief under Chapter 11 of the Bankruptcy Code. With the motions for entry of judgment and to vacate the arbitration award pending, on June 16, 2004, Canada removed the state court proceeding to this court.

On July 12, 2004, Heritage filed a motion to reconsider the order confirming the arbitration award. The motion to reconsider raises the same issues as the pending motion to vacate. On removal to federal court, the federal court continues the litigation without the need for re-pleading. Bankruptcy Rule 9027(g). The Federal Rules of Civil Procedure apply to proceedings under the Federal Arbitration Act. Fed.R.Civ.P. 81(a)(3). Rule 9027(g) is derived from Fed.R.Civ.P. 81(c). The court therefore considers that the motion to reconsider renews the pending motion to vacate. If the court construed the motion to reconsider as a motion to vacate, the motion would be timely. 9 U.S.C. § 12; 11 U.S.C. § 108(b).

The court granted a motion to appoint a Chapter 11 trustee. By order entered August 14, 2004, the court confirmed the appointment of Faulkner as the trustee. On September 9, 2004, the court granted Faulkner's motion to intervene as the plaintiff in this adversary proceeding.

On October 28, 2004, Kornman filed a motion for judgment confirming the denial of Canada's claims against him, and joined in the trustee's motion to vacate the award to Canada. On October 26, 2004, Holdings filed an objection to Canada's claim in the underlying bankruptcy case. By order entered December 16, 2004, the court set a briefing schedule for these matters.

### Motion to Vacate

■ As a threshold matter, Canada contends that this court cannot reconsider the state court's order confirming the arbitration award. *See, D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Canada misconstrues the procedural posture of this proceeding. The Federal Arbitration Act provides for both a motion to confirm an arbitration award and a motion to vacate an award. 9 U.S.C. §§ 9 and 10. Following those motions, the Federal Arbitration Act provides for the entry of a

judgment based on an award. 9 U.S.C. § 13. Upon removal, the Federal Rules of Civil Procedure, as made applicable by the Bankruptcy Rules, govern the procedure. This court continues the litigation beginning with the procedural posture in the state court at the time of removal. This court has discretion to allow re-pleading. Rule 9027(g).

Heritage timely moved to vacate the arbitration. The state court, although stating that grounds did not exist to vacate the award, did not consider the motion. This court must now do so. The motion must be adjudicated before the court considers a motion for entry of judgment under 9 U.S.C. §§ 9, 10 and 13 and Bankruptcy Rule 7058. The entry of a judgment cannot occur until the entry of an order confirming an arbitration award. The entry of an order confirming an arbitration award cannot occur until the resolution of a motion to vacate the award. The motion to vacate the order had been timely filed. In addition, following entry of a final judgment, a party may move for a new trial or, in the vernacular, to reconsider. Rule 9023.

The court therefore turns to the merits of the motion to vacate. The trustee, Heritage and Holdings all contend that the arbitrators exceeded their powers, disregarded the law and entered an award against public policy.

■ A court's "review of an arbitration award is extraordinarily narrow." *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 (5th Cir.2004). "If an award is rationally inferable from the facts before the arbitrator, the award must be affirmed... [W]hatever indignation a reviewing court may experience in examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing so." *Id.* Under the Federal Arbitration Act, the court may vacate an arbitration award "where the arbitrators exceeded their powers..." 9 U.S.C. § 10(a)(4). To determine whether the arbitrators exceeded their powers, the court assesses whether the award draws its "essence" from the arbitration agreement. 390 F.3d at 353. "To draw its essence from the contract, the award must, in some logical way, be derived from the wording or purpose of the contract....Under the essence analysis, the single question is whether the award, however arrived at, is rationally inferable from the contract." *Id.*

■ Besides the statutory grounds, "manifest disregard of the law and contrary to public policy are the only non-statutory bases recognized by [the Fifth Circuit] for vacatur of an arbitration award." *Id.* "[M]anifest disregard for the law means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing principle but decides to ignore or pay no attention to it... Even if the arbitrator did manifestly disregard the law, a second step of the manifest disregard analysis requires that before an arbitrator's award can be vacated, the court must find that the award resulted in a 'significant injustice.'" 390 F.3d at 352, n. 2.

■ Applying these tests, if the court concludes that the arbitrators exceeded their powers, the court may vacate an award or a portion of an award. Indeed, "[w]here the arbitrator exceeds the express limitations of his contractual mandate, judicial deference ends and vacatur or modification of the award is an appropriate remedy." *Bruce Hardwood Floors*

*v. UBC,* 103 F.3d 449, 452 (5th Cir.), *cert. denied,* 522 U.S. 928, 118 S.Ct. 329, 139 L.Ed.2d 255 (1997).

██ Arbitration agreements must be written. 9 U.S.C. §§ 2, 3. Arbitrators are bound to the terms of the parties' written agreement in fashioning an award. *Houston Lighting & Power Co. v. International Bhd. of Elec. Workers,* 71 F.3d 179, 183 (5th Cir.1995).[1]

Canada and Heritage agreed "to submit to and settle Any and All Claims by binding arbitration." Agreement, § 11.1. They broadly defined "Any and All Claims." Agreement, § 1. "Except as otherwise provided" in the agreement, the parties agreed that the arbitrators would apply Texas law and could grant any relief that a court of the State of Texas could provide. Agreement, § 11.6. However, Canada and Heritage expressly agreed that the arbitrators "shall not, in any event, make any ruling, finding, or award that does not conform to the terms and conditions of this Agreement." Agreement, § 11.6.

The trustee, Heritage and Holdings contend that in several instances, the arbitrators made an award that does not conform to the terms and conditions of the agreement. They contend that the arbitrators deviated from the agreement by awarding Canada damages based on an oral agreement, by refusing to award Heritage attorney's fees and by declining to have the parties share the arbitration costs. The court addresses these issues in turn.

### Oral Agreement

██ Canada claimed that Heritage breached an oral agreement of August 2000 to pay commissions. The arbitrators found for Canada, awarding damages of $3,413,676.93, and interest of $1,680,090.20.

Canada and Heritage agreed that their written employment agreement embodied their entire agreement which "may be amended or supplemented only by an instrument in writing executed by" Heritage and Canada. Agreement, § 10.10. The agreement set Canada's salary and provided that any additional compensation would be discretionary with Heritage. Agreement, §§ 3.1(a) and (b)(1). Canada and Heritage agreed that "no modification of this Agreement may be made orally or inferred from a course of conduct and that no obligation of [Heritage] to pay, or right of [Canada] to receive, a bonus may be created, inferred or in any other manner arise from any previous bonus payments or any projected payments ..., regardless of whether any such past, present or future bonus payments constitute isolated instances or customary practices." Agreement, § 3.1(b)(3). The parties defined "bonus" to include "commissions." Agreement, § 3.1(b)(8). Heritage and Canada modified this agreement once, in writing, to increase Canada's salary.

By awarding commissions based on an oral agreement, the trustee, Heritage, Kornman and Holdings argue that the arbitrators made an award that does not conform to the terms and conditions of the agreement.

But Canada responds that the agreement's language notwithstanding, he and Kornman, on behalf of Heritage, agreed to orally modify the written agreement to permit compensation based on an oral agreement. Canada contends that he submitted that issue to the panel. Canada asserts that the question of whether the

[1]. Although there are distinctions between cases under the Labor Relations Management Act and the Federal Arbitration Act, labor cases may be cited to interpret the Federal Arbitration Act, when the distinctions do not apply to the issue being addressed. *Kergosien,* 390 F.3d at 352, n. 2.

parties orally agreed to modify the no oral agreement provision of the agreement falls within the "Any and All Claims" that may be determined by the arbitrators. Canada argues that the issue had been submitted to the panel for determination.

The arbitration agreement required that the award of the arbitrators "shall be in writing and shall specify the factual and legal bases for the award." Agreement, § 11.7. The arbitrators did not specify the factual and legal bases for their award in writing. The parties waived that requirement. That waiver notwithstanding, the arbitrators charged the parties approximately $140,000 plus the charges of the American Arbitration Association. The arbitrators rendered a multimillion dollar award based on an alleged oral agreement. The parties' written agreement expressly and explicitly provided that the written agreement could only be amended or supplemented in writing. Agreement, § 10.10. The agreement limited the arbitrator's authority to make an award consistent with the terms of the written agreement. Agreement, § 11.6. The arbitrators knew that they were deviating from the written agreement. The arbitrators are a distinguished panel of former judges who necessarily would know that an award on an oral agreement would be challenged. Yet, the arbitrators provide no written explanation of how they derived an award based on an oral agreement.

 The arbitrators' "jurisdiction is defined by both the contract containing the arbitration clause and the submission agreement. If the parties go beyond their promise to arbitrate and actually submit an issue to the arbitrator, [the court] looks both to the contract and the scope of the submissions to the arbitrator to determine the arbitrator's authority." *Kergosien*, 390 F.3d at 354.

While the parties could submit "Any and All Claims" to the arbitrators, the arbitrators could not make any award that did not conform to the terms and conditions of the agreement. The agreement expressly provided for Canada's compensation. The agreement could not be modified orally or by the parties' course of conduct. That means that the arbitrators could not make an award for damages for compensation based on any agreement or course of conduct outside or beyond the written agreement, unless they found that the requirement for a written modification had itself been orally modified. The arbitrators awarded Canada damages based on an oral agreement.

The court must therefore determine whether the parties submitted to the arbitration panel the issue of whether they orally agreed to amend or modify the employment agreement to permit oral agreements concerning compensation. That is, did the parties present to the arbitration panel the issue of whether they orally agreed to modify the employment agreement's prohibition of oral agreements or the employment agreement's requirement for modifications to be written? If that issue had been presented to the panel and the panel concluded that the parties had orally agreed to amend the no oral modification prohibition, then an award based on an oral agreement would conform to the terms and conditions of the agreement. Stated differently, under the Fifth Circuit's test, if the issue had been submitted to the panel, the court could rationally infer that the arbitrators based their decision on the agreement.

Canada presented claims for compensation based on alleged oral promises to the arbitration panel. Canada contended that the parties agreed to orally modify the employment agreement's compensation provisions. Heritage moved to dismiss

those claims. Heritage argued to the arbitrators that under the employment agreement Heritage had the sole discretion to pay Canada a bonus. Heritage further argued that the employment agreement could not be modified orally or by course of conduct. Heritage observed that the parties had not amended the employment agreement in writing to incorporate any alleged oral promise. Heritage thereby contended that the arbitrators had to find that any alleged oral promise or agreement would not be valid.

But Canada argued that the parties did agree to orally modify the compensation provisions of the employment agreement. Heritage contended in its motion to dismiss that regardless of how the panel decided the dispute regarding the alleged oral modification to the written compensation provisions, Canada did not submit to the panel an issue of whether the parties agreed to modify or amend the employment agreement's prohibition barring oral modifications. Without an amendment removing that prohibition, Heritage argued Canada could not recover on an oral compensation agreement.

Canada responded to the motion to dismiss by arguing that Texas law permitted oral modifications to written agreements that contained a prohibition of oral modifications. Canada addressed the Texas Statute of Frauds, asserting that the employment agreement could be orally modified consistently with the Statute of Frauds. On that premise, Canada argued that the parties orally agreed to modify the employment agreement's compensation provisions. Canada maintained that the employment agreement, arbitration rules and Texas procedural rules did not provide for a dismissal.

The panel denied the Heritage motion to dismiss without stating its reasons.

In his brief on the merits of his claim, Canada argued to the panel that Heritage owed him commissions based on two distinct oral agreements. He argued that the parties orally modified the employment agreement, consistently with Texas law. He argued that the parties orally agreed to certain compensation and that they orally agreed to modify the compensation provisions of the employment agreement. Canada further contended that Heritage and Kornman breached the oral modification to the compensation agreement. Canada presented other claims not here relevant.

Heritage responded that it and Canada did not make any oral agreements. Heritage insisted that the parties did not agree to orally modify the employment agreement's compensation provision. Instead, Heritage maintained its discretion to pay Canada bonuses. Heritage referred the panel to the employment agreement's prohibition of oral modifications.

Heritage argued that the employment agreement could not be modified orally or by the parties' course of conduct. Heritage told the panel that Canada agreed that he could not receive compensation based on an oral agreement. Heritage urged the panel not to allow Canada to undo the written agreement.

This record establishes that Heritage, in its motion to dismiss, contended that the parties made no oral agreements. In addition, Heritage contended that the parties did not modify the employment agreement in writing, thereby making any oral promise to pay unenforceable, as the employment agreement prohibited oral modifications. In his claim, Canada contended that the parties did orally modify the employment agreement's compensation provisions. Heritage again responded that the parties made no such oral agreement, and

that the employment agreement prohibited oral agreements.

The court rationally infers that the panel had to decide the following questions: Did the parties indeed agree to orally modify the requirement that the employment agreement be modified only in writing without any oral modifications? Heritage submitted that issue in its motion to dismiss and in its responses to Canada's claims. If so, did the parties agree to orally modify the employment agreement's compensation provisions? Canada submitted that issue in his brief in support of the claim and in his response to Heritage's motion to dismiss. Heritage responded to that contention. If so, did the parties actually agree to a binding or enforceable bonus arrangement? Both parties presented and argued that issue.

The court concludes that the parties actually submitted these issues to the panel. The court must look both to the employment agreement and the submissions to determine the arbitrator's authority. Without those submissions, the award could not be logically derived from the written agreement. But with those submission, the award can be rationally inferable from the agreement. The panel could have found, from those submissions, that the parties orally agreed to modify the employment agreement concerning the prohibition of oral modifications and the requirement that modifications be written to further find that the parties orally agreed to modify the employment agreement's compensation provisions. The panel could have then found an oral agreement for compensation, a breach of that agreement, and resulting damages. With those findings, the award will conform to the terms and conditions of the agreement.

The court cannot find that the award constitutes a manifest disregard for the law. The court finds no obvious error of law. The court cannot find that the panel ignored or paid no attention to a principle of law. The legal issues argued to this court had also been argued to the panel.

On a related issue, Heritage and Holdings contends that the court should vacate the portion of the award for breach of contract for excessive damages for Canada in the amount of $114,000 plus pre-judgment interest of $67,509.25. They assert that the award is necessarily based on an oral agreement. This raises the same issue, requiring the same resolution.

The court will deny the motion to vacate the portion of the award based on an August 2000 oral agreement and the portion of the award based on the breach of contract excessive damages.

### Attorney's Fees

■ The panel refused to direct that Canada pay Heritage's attorney's fees for the arbitration while it awarded $886,000 of fees for Canada.

Canada and Heritage agreed that "[Canada] will pay to [Heritage] ... all legal fees and other expenses incurred by or on behalf of [Heritage] relating to or in connection with enforcing this Agreement or in defending any action by [Canada] to enforce this Agreement, regardless of which party ultimately prevails in said action." Agreement, § 10.8.

The trustee, Heritage, Kornman and Holdings observe that the arbitrators made an award that did not conform to that term and condition of the agreement. Canada, in effect, concedes that point. But Canada argues that Texas law does not permit the recovery of legal fees by the losing party. Indeed, Canada argues that under the so-called American rule, attorney's fees would not be awarded to Heritage.

Canada and Heritage agreed that the arbitrators would apply Texas law "except

as otherwise provided" in the agreement. The agreement provided otherwise regarding attorney's fees.

Canada argues that the parties submitted the attorney's fees request to the arbitration panel. But Canada did not contend in arbitration that the parties had agreed to revoke or suspend § 10.8 of their agreement. The court cannot rationally infer that the arbitrators based their decision on the agreement. To the contrary, the arbitrators failed to rule in conformity with § 10.8. The court must therefore vacate the portion of the award that refuses to award that Heritage recover its legal fees and other expenses from Canada under § 10.8 of their agreement.

■ On the other hand, the agreement does not expressly address recovery of attorney's fees by the prevailing party. Canada argues that under Texas law he may recover attorney's fees for a breach of contract by Heritage. Unless provided otherwise by the agreement, the arbitrators applied Texas law. The agreement did not provide otherwise for the recovery of attorney's fees by the prevailing party. The motion to vacate the award of attorney's fees to Canada must be denied. Recovery of attorney's fees by Canada does not negate his agreement to pay Heritage's attorney's fees, regardless of who prevailed. Canada agreed that constituted a cost of pursuing a claim against Heritage. But, if he prevailed, Canada could recover under Texas law. The parties further agreed that Heritage could set-off amounts that it may owe Canada against amounts Canada may owe Heritage. Agreement, § 10.3.

### Splitting Arbitration Costs

■ The arbitrators awarded Canada $79,994.49 for arbitration costs he had paid and directed that Heritage pay the arbitra-tors $139,974.87 and pay the American Arbitration Association $50,144.62.

Canada and Heritage agreed that "[t]he costs and expenses of the arbitrators for any arbitration shall be split evenly between [Canada] and [Heritage]." Agreement, § 11.4.

Canada argues that the arbitration rules authorize the arbitrators to allocate expenses. But the parties expressly agreed to split the costs and expenses. Canada did not contend in arbitration that the parties agreed to revoke or suspend § 11.4 of their agreement. The arbitrators' award had to be consistent with the terms of the employment agreement. The arbitrators failed to rule in conformity with § 11.4 and entered an award directly contrary to § 11.4. The court must therefore vacate the award of arbitration costs to Canada and the portion of the award that directed Heritage to pay the arbitrators and the American Arbitration Association.

### Objection to Canada's Claim

Based on the state court's order confirming the arbitration award in his favor, Canada filed a proof of an unsecured claim against the Heritage bankruptcy estate in the amount of $6,161,270.08. Reiterating the reasons to vacate the arbitration award in favor of Canada, Holdings objects to the claim. Heritage joins in the objection. The court's adjudication of the motion to vacate the arbitration award subsumes these objections to Canada's claim.

■ In addition, Holdings contends that the claim should be disallowed because, as an insider and as legal counsel for the debtor, Canada did not provide reasonable value for his services to the debtor. 11 U.S.C. § 502(b)(4). Canada is an attorney. Canada may be considered an insider of Heritage. Section 502(b)(4) only applies to the allowance of a claim in a bankruptcy case. Consequently, it could

not have been litigated nor addressed in the arbitration proceeding. The arbitration proceeding may not be invoked to collaterally estop an objection to the claim based on § 502(b)(4). *Garner v. Lehrer (In re Garner),* 56 F.3d 677 (5th Cir.1995); *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984); *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985); *Tarter v. Metropolitan Savings & Loan Association,* 744 S.W.2d 926, 928 (Tex.1988).

Canada holds a claim based on the arbitration award of $3,413,676.93 for breach of an oral compensation agreement, plus interest of $1,680,090.20. In addition, he holds a claim of $114,000 for breach of contract plus interest of $67,509.25. The court must determine at a subsequent hearing or trial whether these claims are subject to objections under § 502(b)(4).

Holdings further argues that Canada's employment agreement with Heritage bars recovery of additional compensation after the termination of Canada's employment by Heritage. 11 U.S.C. § 502(b)(7). Section 502(b)(7) applies to a claim of an employee for damages resulting from the termination of an employment contract. Canada's claim is not based on damages from the termination of an employment contract. The court overrules this objection to the claim.

### Kornman Motion for Judgment

The arbitrators denied Canada's claims against Kornman. Kornman requests the entry of an order confirming that determination and the entry of a final judgment denying Canada's claims against Kornman. 9 U.S.C. §§ 9 and 13. Kornman had not requested that the state court confirm the award in his favor prior to removal. However, the state court confirmed the award in its entirety, necessarily including the arbitrators' denial of Canada's claims against Kornman.

■ Canada contends that the court cannot partially vacate and partially confirm the arbitrators' decision. The court disagrees. *Smith v. Transport Workers Union of America,* 374 F.3d 372, 375 (5th Cir.2004). Canada argues that *Smith* applies only to collective bargaining cases. Under the Federal Arbitration Act, Canada asserts that the court may only modify an arbitration award under 9 U.S.C. § 11, which is not applicable here. Otherwise, the court must confirm the award, 9 U.S.C. § 9, or vacate the award. 9 U.S.C. § 10. Canada's reading of the Federal Arbitration Act would compel the court to vacate the entire award, including the portion in Canada's favor. Since the court has concluded that the trustee's motion to vacate a portion of the award had to be granted, under Canada's reading of the statute, the court would vacate the entire award. That restrictive reading of the Federal Arbitration Act does not comport with Fifth Circuit instruction. The court applies the *Smith* analysis. If an arbitration panel exceeds its authority, it provides grounds for a court to vacate that aspect of its decision. 374 F.3d at 375; *see also Container Prods., Inc. v. United Steelworkers of America, and its Local 5651,* 873 F.2d 818, 820 (5th Cir.1989)("[M]odification of an arbitration award is clearly proper where the arbitrator has exceeded his authority."). Canada's claims against Heritage are divisible from Canada's claims against Kornman.

The court will therefore grant Kornman's motion for entry of a judgment confirming the denial of Canada's claims against him.

### Canada Motion for Judgment

Canada moves for entry of a final judgment based on the arbitration award. 9 U.S.C. § 13, Rule 7058. Canada concedes that the court may enter a judgment in his favor only to the extent that the court denies the trustee's motion to vacate the arbitration award.

 Canada requests that the court seal the final judgment. Canada invokes the parties' agreement that proceedings to enforce an arbitration award would be filed under seal and kept confidential. Agreement, § 11.8. Canada has voluntarily filed a proof of claim in the Heritage bankruptcy case. Under the Bankruptcy Code, all documents are public records unless specifically excepted. Canada has not established the application of an exception. 11 U.S.C. § 107. Accordingly, the court denies Canada's request that any final judgment be sealed.

The trustee asserts that even if the court denied his motion to vacate the arbitration award, entry of a final judgment would still be premature. The trustee contends that he may yet file a legal malpractice action against Canada which should be considered prior to the entry of a final judgment. No malpractice claim is pending against Canada. Canada recognizes that the trustee may seek to subordinate under 11 U.S.C. § 510 any allowed claim based on a judgment. Under § 13 of the Federal Arbitration Act, Canada may obtain a final judgment on the portion of the arbitrators' award that survives the motion to vacate.

Accordingly, the court will grant Canada's motion to the extent that the arbitrators' award survives the motion to vacate. The resulting judgment will be subject to set-off and to remaining issues raised by the objection to the allowance of a claim by Canada under the Bankruptcy Code.

### Order

Based on the foregoing,

**IT IS ORDERED** that:

1. The trustee's motion to vacate the arbitration award is **DENIED IN PART and GRANTED IN PART**. The award of arbitration expenses to Canada is vacated. The award that Heritage pay all the American Arbitration Association fees and the arbitrators' fees is vacated. The denial of Heritage's claims for attorney's fees from Canada is vacated. The motion to vacate is otherwise denied.

2. The objection to Canada's claim is **SUSTAINED IN PART, CARRIED IN PART and OVERRULED IN PART**, consistent with the court's ruling on the motion to vacate.

3. Canada's motion for entry of a judgment is **GRANTED IN PART and DENIED IN PART**. The court shall conduct a status conference or hearing regarding determination of attorney's fees to be awarded to Heritage and the allocation of arbitration expenses. Following those determinations, Canada shall have a judgment for the portion of the arbitration award that survived the motion to vacate, and the trustee shall have a judgment for the recovery of attorney's fees. In calculating the respective judgments, the court will consider whether Heritage paid the arbitration costs and the arbitrators' fees, making adjustments accordingly pursuant to the employment agreement. The court shall apply the trustee's judgment to Canada's judgement. Canada shall have a claim for the difference against the bankruptcy estate, subject to the remaining claims objection. The court would then adjudicate the remaining objections to the allowance of the claim.

4. Kornman's motion for a final judgment denying Canada's claims against him

based on the arbitration panel's decision is **GRANTED**.

5. The court shall conduct a status conference on *April 6, 2005, at 9:30 a.m.*