United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 2, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

—————————————————

No. 04-20933

—————————————————

LOIS ALBERT,

Plaintiff-Appellant,

versus

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

Defendant-Appellee.

—————————————————————————

Appeal from the United States District Court
for the Southern District of Texas
(No. 4:03-CV-1841)

—————————————————————————

Before BARKSDALE and CLEMENT, Circuit Judges, and ENGELHARDT, District Judge.[*]

PER CURIAM:[**]

Plaintiff-Appellant Lois Albert ("Albert") appeals from the district court's order granting

summary judgment in favor of Defendant-Appellee Life Insurance Company of North America

("LINA"). Finding no error, we affirm.

**I. FACTS AND PROCEEDINGS**

---

[*]District Judge of the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to 5th CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

This dispute is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). The facts of this case are largely uncontested. The disputes on appeal involve the appropriate standard of review to be applied to LINA's decision to deny Albert long-term coverage under her employer's Long Term Disability Plan (the "Plan") and whether the record supported LINA's decision.

## A.      Albert's Employment and Illness

Albert worked as a tax supervisor at American General for approximately twenty-five years. Her occupation required that she engage in "frequent reaching, handling, fingering, talking, hearing and near acuity, with occasional lifting of up to 10 lbs," during a normal, forty-hour work week. Albert participated in the Plan, which was administered and underwritten by LINA.

In 1994, Albert underwent surgery to remove a portion of her right lung. Albert alleges that, following this event, she began to suffer a number of medical maladies with symptoms including dry mouth, difficulty sleeping, shortness of breath, and general discomfort. Albert contends that, during the years that followed, she was diagnosed and treated for lupus, chronic fatigue syndrome, fibromyalgia, and asthma. In August 2000, Albert went on medical leave. Shortly thereafter, in October 2000, Albert returned to work. Her condition worsened again, and her treating physician, Dr. Buencamino, refused to approve her return to work.

## B.      Albert's Application for Benefits

After her second departure from work, Albert applied for and received short-term disability benefits under the Plan. She also applied for long-term disability benefits, but LINA denied her application. Albert appealed this decision, and, on October 10, 2001, LINA reversed the decision and approved Albert's claim.

In accordance with the terms of the Plan, LINA informed Albert that the approval of her claim required proof of Albert's ongoing disability. Four months later, LINA scheduled a battery of tests for Albert by LINA-selected experts. After reviewing the test results, LINA again reversed its decision and, on May 13, 2002, discontinued her long-term disability benefits. Albert challenged LINA's decision by bringing suit in federal district court claiming LINA's final decision was arbitrary and capricious and in violation of the Plan's fiduciary duty to its members. The parties cross-moved for summary judgment, and the district court granted summary judgment in LINA's favor.

## C.    The Medical Evidence

LINA originally denied Albert's claim based on medical evidence and test results from Albert's treating physician, Dr. Buencamino. LINA concluded that its review of the records of Albert's doctor failed to demonstrate "a degree of disability . . . that would prevent [Albert] from performing [her] occupation as a Tax Compliance Supervisor." As per the terms of the Plan, LINA determined that Albert was unqualified to receive long-term disability benefits because she was neither "unable to perform all the material duties of . . . her Regular Occupation or a Qualified Alternative" nor "unable to earn 80% or more of . . . her Indexed Covered Earnings." Albert's original appeal of the administrative decision and LINA's subsequent reversal were based on a reconsideration of this same evidence. The evidence presented at that stage also included reports from other doctors whom Albert had consulted at various points throughout her treatment.

LINA's final reconsideration of Albert's qualification for long-term disability benefits was based on three distinct inquiries by its own experts. First, Albert underwent a Functional Capacity Examination ("FCE") with evaluator Katherine Hughes, which included an hour-long interview and almost four hours of interaction. Hughes determined that Albert's performance in the FCE

demonstrated that she was qualified to perform her job as a tax analyst. Second, Dr. George Kevorkian performed an Independent Medical Examination ("IME"), which included a physical examination and a review of all of Albert's medical records. Dr. Kevorkian concluded that there was "absolutely no physical reason or obvious cognitive reason why [Albert] cannot perform her job duties." Third, Dr. David Allan conducted a "peer review" of these two assessments and all of Albert's medical records. Dr. Allan concluded that "no medical documentation . . . support[ed] Ms. Albert's inability to work in the sedentary job category, specifically in her occupation as a tax analyst."

## II. STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed by this court *de novo*, employing the same standard as that employed by the district court. *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Employee Health Care Plan*, 426 F.3d 330, 333 (5th Cir. 2005) (citing *Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co.*, 391 F.3d 639, 641 (5th Cir. 2004)). Questions of law are also reviewed *de novo*. *Id.* (citing *In re CPDC, Inc.*, 337 F.3d 436, 441 (5th Cir. 2003)). The district court will grant a motion for summary judgment if, based on the pleadings, there exist no remaining genuine issues of material fact and the movant is entitled to a judgment as a matter of law. *Keszenheimer v. Reliance Standard Life Ins. Co.*, 402 F.3d 504, 507 (5th Cir. 2005) (citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). To the extent they give rise to multiple inferences, facts are construed in favor of the non-movant. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and *Ramming v. Nat'l Gas Pipeline Co. of Am.*, 390 F.3d 366, 371 (5th Cir. 2004)).

Because the Plan gives the administrator discretion to make claim determinations,[1] the court must apply an abuse of discretion standard in reviewing the administrator's decision. *Atteberry v. Memorial-Hermann Healthcare Sys. ex rel. Atteberry*, 405 F.3d 344, 347 (5th Cir. 2005) (citing *Pickrom v. Belger Cartage Serv., Inc.*, 57 F.3d 468, 471 (5th Cir. 1995)). The abuse of discretion standard requires that the administrator's factual determinations be supported by substantial evidence. *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999). An administrator's decision will be considered "arbitrary only if [it is] 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Id.* (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828–29 (5th Cir. 1996)). In order to uphold the administrator's decision, this court must determine "that [it] fall[s] somewhere on a continuum of reasonableness—even if on the low end." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999) (en banc). Even where the administrator has a conflict of interest, this court will "focus on whether the record adequately supports the administrator's decision." *Id.* at 298. However, in such cases, the court "gives less deference to the administrator in proportion to the administrator's apparent conflict." *Id.* at 296.

On appeal, Albert argues (1) that the district court erred by failing to consider evidence from outside the record that tended to show that LINA had a conflict of interest, which tainted its decision and (2) that the district court erred in concluding that there was substantial evidence to support LINA's determination that Albert was ineligible for long-term disability benefits. Albert's argument that the district court erred by refusing to consider evidence of LINA's conflict of interest is a legal question and is reviewed *de novo*. Her contention that the district court erred in granting LINA's

---

[1]The parties agree that the administrator has discretion under the Plan's terms.

- 5 -

summary judgment motion is also reviewed *de novo*, though under the abuse of discretion standard.

# III. DISCUSSION

## A. Conflict of Interest & Standard of Review

Albert maintains that the level of deference due an administrator's decisions operates on a "sliding scale," depending on the extent to which the administrator has a conflict of interest. Albert further argues that a court, in making this determination, is not bound by the administrative record. Based on these premises, Albert asserts that the district court erred in limiting its analysis to consideration of evidence within the administrative record.[2] While Albert has correctly identified both rules, her claim that the district court failed to follow them is without merit.

## (1) The Sliding Scale & Evidence from Beyond the Record

Sitting *en banc*, this court determined that the sliding scale approach would be the law of the circuit. *Vega*, 188 F.3d at 297. "Under the 'sliding scale' standard, the court always applies the abuse of discretion standard, but gives less deference to the administrator in proportion to the administrator's apparent conflict." *Id.* at 296. The *Vega* court explained that under this approach, where the administrator appears conflicted, a court should be "less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision." *Id.* at 299.

With respect to the question of what evidence a court may consider, our circuit has been clear:

---

[2]Specifically, Albert argues that the district court failed to consider evidence, not in the administrative record, tending to show (1) that LINA, as both administrator and underwriter of the Plan, had a conflict of interest, and (2) that LINA stated, in deposition, that it had no fiduciary duty with respect to Albert.

"when assessing factual questions, the district court is constrained to the evidence before the plan administrator." *Id.  See also Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 215 F.3d 516, 521 (5th Cir. 2000).  Some exceptions to this rule exist.  For example, a court may look beyond the record for "evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim." *Vega*, 188 F.3d at 299.  In addition, this circuit has observed that, given the practical limitations of proving a conflict of interest, it is permissible to look "beyond the record of the administrator" to address the conflict questions.  *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 356 (5th Cir. 2004).  While the discussion in *Kergosien* involved an arbitrator's use of non-record materials, the arbitrator was required to review the issue as would a federal court.  *See id.*  More importantly, the reasoning in *Kergosien* is equally applicable here; a court should not be limited to the administrative record, which is under the control of the administrator, when determining the existence and extent of a conflict of interest and, as a result, the appropriate level of deference to afford the administrator.  *See id.*  In other words, when determining *which* level of deference to afford an administrator, a court may look beyond the administrative record for evidence of a conflict of interest.  However, a court remains bound to consider only material from the administrative record in determining *whether* an administrator abused the discretion afforded.

**(2)     The District Court's Consideration of the Evidence Presented**

In her opposition to LINA's motion for summary judgment, Albert submitted an affidavit, which provided details of her interaction with the LINA claim agents, and a deposition from Chris Brady, a representative of LINA.  The deposition testimony showed that LINA did not believe that

it had a fiduciary duty to Albert. Albert asserted that this evidence supported her claim that LINA suffered a conflict of interest and, as a result, should be afforded no deference.

The district court expressly declined to consider these non-record documents and explained its decision as follows:

> In her opposition/cross motion for summary judgment, Albert relies heavily on her own affidavit, the deposition of Chris Brady (LINA's corporate representative), and various other documents. [citations omitted] To the extent these materials are not labeled as part of the administrative record, the Court will not consider them in determining whether LINA abused its discretion.

Albert looks to this statement as proof that the district court erred in determining *which* level of deference was appropriate. The district court did not, however, exclude the non-record evidence for this purpose. The district court only affirmatively held that it would not consider the information for the purposes of determining *whether* LINA abused its discretion; the district court was silent as to whether or not it considered the non-record evidence for the purpose of defining the level of deference.

Despite Albert's suggestion to the contrary, the district court's approach to the case shows that it appropriately lowered its level of deference to LINA's decision regarding Albert's benefits because of the fact that LINA benefitted financially from the denial of Albert's benefits. The district court specifically employed the *Vega* sliding scale approach when it recognized that "LINA is entitled to somewhat less deference than usual because it is a self-interested administrator." Based on this recognition, the district court limited the level of deference to match LINA's conflict of interest.[3] To

_____

[3]The district court correctly noted that a *de novo* standard of review of an administrator's decision is appropriate only when the relevant plan provides the administrator with no discretion as to how to apply the benefits. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

the extent that Albert argues that the district court should have further considered her evidence of conflict of interest, her argument is both unsupported by precedent and without merit.[4]

## B.    Support for the Administrator's Action

Albert argues on appeal that there is no substantial evidence to support LINA's decision to discontinue her long-term disability benefits. LINA responds that Albert's attacks on the evidence supporting LINA's decision—the FCE, the IME and the peer review—are insufficient to raise a genuine issue of material fact that LINA abused its discretion in denying Albert continued long-term disability benefits. We agree that summary judgment was proper; LINA's decision to terminate Albert's long-term disability benefits was not an abuse of discretion because it is sufficiently supported by the record.

In her most recent round of testing, Albert went to three different experts, all of whom opined that she was capable of performing her job as a tax analyst. First, Katherine Hughes conducted the FCE, which lasted approximately four hours. In the exam, Hughes evaluated Albert while she exercised at a level of rigor that exceeded her job description. Based on the FCE results, Hughes concluded that Albert was able to perform "light work" for up to four hours per day.[5] Next, Dr.

_____

[4]Even if the district court erred by failing to consider the deposition that purportedly showed a conflict of interest relevant to the standard of review, such error was clearly harmless. The allegedly damaging deposition simply restated the appropriate relationship between the administrator and the Plan. *See* 29 U.S.C. § 1104(a)(1) (explaining that a fiduciary has a duty to the plan as a whole). The fact that Brady stated in his deposition that LINA had no fiduciary duty to Albert as an individual is unavailing because this is an appropriate description of an administrator's duty. Indeed, for an administrator to be obligated to an individual member of a plan would tend to indicate that the administrator was in breach of its fiduciary duty to the plan as a whole.

[5]"Light work" is defined as "involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The district court properly observed that Albert's position is considered "sedentary work." The regulations also note:

George Kevorkian conducted the IME. Dr. Kevorkian determined that he could not conclude with certainty that Albert suffered from either fibromyalgia or chronic fatigue syndrome. Ultimately, Dr. Kevorkian identified no irregularities in the IME. When considering Albert's job description, Dr. Kevorkian found "absolutely no physical reason or cognitive reason why [Albert] cannot perform her job duties." Finally, Dr. David Allan reviewed these tests and all of Albert's medical records. Upon review of all of the previous doctors' conclusions, Allan concluded that "[t]here is no medical documentation in the record . . . to support Ms. Albert's inability to work in the sedentary job category."

Albert concedes that the appropriate standard for approving an administrator's action is whether the action is supported by substantial evidence. *See Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004) ("The law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits. . . ."); *Meditrust*, 168 F.3d at 215 ("[W]e affirm an administrator's decision if it is supported by substantial evidence. . . ."). "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ellis*, 394 F.3d at 273 (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)).

Albert legitimately disputes the evidence recited above. However, LINA's decision to deny Albert's long-term disability benefits is not required to be supported by indisputable evidence. The *Vega* court clearly held: "we do expect the administrator's decision to be based on evidence, even

"If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id*.

if disputable, that clearly supports the basis for its denial." *Vega*, 188 F.3d at 299. The evidence relied on by LINA is adequate support for its decision to deny Albert's long-term disability benefits. Because no issue of material fact exists and LINA is entitled to a judgment as a matter of law, we uphold the district court's grant of summary judgment.

## IV.  CONCLUSION

Finding no error, we AFFIRM.