REVISED February 22, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 20, 2008

Charles R. Fulbruge III
Clerk

No. 07-20012

WARTSILA FINLAND OY; WARTSILA GUATEMALA, SA,

Plaintiffs - Appellees

v.

DUKE CAPITAL LLC,

Defendant

DUKE ENERGY INTERNATIONAL GUATEMALA Y CIA., S.C.A., formerly known as Grupo Generador de Guatemala y Cia, S.C.A.

Intervenor Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, SMITH, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Duke Energy International ("DEI") appeals the district court's judgment confirming an arbitration award and denying DEI's request for a stay of enforcement. The district court entered a judgment ordering DEI to pay Wartsila Finland OY and Wartsila Guatemala, SA, (collectively "Wartsila") $13,677,951.64 plus pre- and post-judgment interest. The district court enforced

the arbitrator's award despite the presence of separate, pending arbitration claims brought by DEI against Wartsila. For the following reasons, we affirm the judgment of the district court.

I

In 2002, Wartsila contracted with DEI to construct a power plant near Puerto Quetzal, Guatemala. The contract provided for Wartsila to complete construction of the power plant in four phases. Pertinent to this case, the agreement gave DEI certain rights to withhold payment on invoices. Specifically, Sections 6.9 and 6.10 of the contract provide that:

> Any amount of an Invoice which is disputed by [DEI] as provided in this section 6 shall be resolved in accordance with Section 21. Once the dispute is resolved in accordance with Section 21, [DEI] shall pay any amount owing within five (5) Business Days after the date of the final resolution.

> [DEI] may withhold payment on an invoice or a portion thereof in an amount and to such an extent as may be reasonably necessary, subject to the dispute resolution provisions of Section 21, to protect [DEI] from loss because [of]. . . work that has not been remedied.

The agreement also gave DEI certain rights to setoff amounts owed to DEI against amounts DEI owed Wartsila. Specifically, Section 6.13 states:

> Notwithstanding any other provision in this Agreement, and in addition to its other rights and remedies, [DEI] shall be entitled to setoff against any amount it owes [Wartsila], or that will become owed to [Wartsila], under this Agreement, any amount that [Wartsila] owes [DEI] under this Agreement.

In Section 21, the contract included an arbitration provision which provided that if disputes could not be resolved by Senior Officers of each party, then the disputes were to be submitted to arbitration held pursuant to International Chamber of Commerce ("ICC") rules. Section 21 states that "any decision rendered by the arbitrators in any arbitration shall be final and binding

upon the Parties, and judgment may be entered on the award in any court of competent jurisdiction."

In April 2003, prior to completion of phase four of the power plant, Wartsila sought payment for disputed invoices and filed a demand for arbitration with the ICC to resolve disputes that had arisen with respect to the first three phases. The arbitral tribunal conducted a hearing as to these claims in September 2004. In January 2005, the tribunal instructed Wartsila and DEI to raise any further claims and counterclaims to be resolved in the arbitration proceeding. Both parties served memoranda containing their remaining claims for relief related to phase four. In February, DEI requested more time from the tribunal, stating that it needed the time to comprehensively address all of its counterclaims. The tribunal refused the request, but stated that it would allow DEI to withdraw any claims that it felt should be reserved for a later proceeding. A second hearing was held in June 2005 to consider all claims and counterclaims that had not been withdrawn. The tribunal then issued a partial award, reserving its decision on all undecided claims for further partial awards or a final award. Because some construction on the project was still ongoing, the parties asked the tribunal to consider a third set of hearings. The tribunal noted that a third set of hearings may be necessary but did not set a date for those hearings.

In September 2005, the tribunal chairman informed the parties that he had been appointed as a High Court Judge in England and that he would therefore be unable to continue as an arbitrator. Wartsila and DEI disputed whether the tribunal should be reconstituted to consider further claims. The tribunal determined that it would not reconstitute itself for another round of hearings, but instead would issue a final award as to the claims then before it. The tribunal allowed DEI to withdraw certain of its claims according to Article

30(4) of the ICC Rules so that DEI might present the claims in a later arbitration proceeding.[1]

In April 2006, the tribunal issued a "Final Award" which dealt with "all remaining claims and counterclaims, including the remaining claims in Phase III and those arising in Phase IV." After correcting computational errors in its award, the tribunal ordered DEI to pay Wartsila €11,315,385 and Wartsila to pay DEI $757,085.

Wartsila sought payment in accordance with the final award. DEI refused to pay, claiming that it was entitled to withhold payment to protect itself from loss due to defective or unfinished work. DEI also contended that it could set off the amounts it sought in its withdrawn claims against the amount ordered to be paid in the tribunal's final award. In October 2006, DEI made a request to the ICC for arbitration in order to bring the claims withdrawn from the previous arbitration. Three days after DEI made this request, Wartsila filed a motion in federal court to have the tribunal's award confirmed and enforced under The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (hereinafter "New York Convention"), see 9 U.S.C. § 207 (providing courts with jurisdiction to confirm and enforce arbitration awards arising under the New York Convention).[2] DEI filed a cross-motion for confirmation as well as a stay of the proceedings pending completion of its newly filed arbitration claims. Because neither party objected to confirmation, the district court confirmed the

---

[1] Article 30(4) of the ICC Rules of Arbitration provides:
When a request for an advance on costs has not been complied with, and after consultation with the Arbitral Tribunal, the Secretary General may direct the Arbitral Tribunal to suspend its work and set a time limit, which must be not less than 15 days, on the expiry of which the relevant claims, or counterclaims, shall be considered as withdrawn. Should the party in question wish to object to this measure, it must make a request within the aforementioned period for the matter to be decided by the Court. Such party shall not be prevented, on the ground of such withdrawal, from reintroducing the same claims or counterclaims at a later date in another proceeding.

[2] The New York Convention, June 10, 1958, 21 U.S.T. 2517 (entered into force with respect to the United States, Dec. 29, 1970), codified at 9 U.S.C. §§ 201-208.

4

award. The district court then rejected DEI's arguments for a stay and enforced the award by reducing it to judgment)) the judgment required DEI to pay Wartsila $13,677,951.64.

DEI appeals, contending that the district court erred in refusing to stay the entry of judgment. DEI presents two arguments in support of a stay. First DEI argues that the award itself, when properly interpreted, required the district court to stay enforcement of the award. Second, DEI argues in the alternative that, even if the award contemplates immediate enforcement, the district court should have exercised its discretion to stay enforcement of the award.

## II

"This court reviews a district court's confirmation of an arbitration award de novo, using the same standards as the district court." American Laser Vision, P.A. v. Laser Vision Inst., L.L.C., 487 F.3d 255, 258 (5th Cir. 2007). As to DEI's claim seeking a stay of enforcement in spite of the arbitration award, we review the district court's decision denying a stay for an abuse of discretion. See Sutter Corp. v. P & P Industries, Inc., 125 F.3d 914, 917 (5th Cir. 1997) (recognizing that a district court's decision whether to stay confirmation of an arbitration award "is ordinarily reviewed for an abuse of discretion"). Because the only potential sources of authority for the district court to grant a stay under these circumstances are discretionary, an abuse of discretion standard is appropriate. See New York Convention, 21 U.S.T. 2517 at Article VI (stating that in certain circumstances a court "may, if it considers it appropriate, adjourn the decision on enforcement of the award"); Hewlett-Packard Co., Inc. v. Berg, 61 F.3d 101, 106 (1st Cir. 1995) (noting that a court may, incidental to its inherent power to control disposition of the cases on its docket, exercise its discretion to stay enforcement proceedings under the New York convention).

## III

We examine two distinct questions in this appeal: first whether the district court's order and judgment are consistent with the arbitration award; and second, even if the tribunal's award allows for immediate enforcement, whether the district court abused its discretion in not staying enforcement of the award.

A

DEI does not challenge the confirmation of the award, nor seek to set aside the award.[3]  Instead, DEI contends that the award should be confirmed "as written." DEI claims that the district court, in issuing a judgment requiring DEI to pay the award amount, misinterpreted the arbitration award. DEI argues that the award did not allow the district court to issue a judgment requiring payment while DEI still had claims outstanding in a separate arbitration arising out of the contract.

A district court should enforce an arbitration award as written)) to do anything more or less would usurp the tribunal's power to finally resolve disputes and undermine the pro-enforcement policies of the New York Convention.  See Scherk v. Alberto-Culver Co., 417 U.S. 506, 519-20 & n. 15 (1974) (explaining purposes of New York Convention); cf. Brown v. Witco Corp., 340 F.3d 209, 216 & 220 (5th Cir. 2003) (noting that, in the labor arbitration context, "a court is required to enforce an arbitration award only as written by the arbitrator" and addressing the magistrate judge's "construction" of the award).  Therefore we look to the tribunal's award in reviewing the district court's confirmation order to ensure the district court properly confirmed and enforced the tribunal's award.  See Folkways Music Publishers, Inc. v. Weiss, 989

---

[3] 9 U.S.C. § 207 states that, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  Because U.S. courts are courts of primary jurisdiction (i.e., a court of the country "in which, or under the [arbitration law of which] an award was made") in this case, the award could be annulled or set aside for reasons in accordance with domestic U.S. "arbitral law and its full panoply of express and implied grounds for relief." Gulf Petro Trading Co., Inc. v. Nigerian Nat'l Petroleum Corp., No. 06-40713, — F.3d —, 2008 WL 62546, at *3 (5th Cir. Jan. 7, 2008).  However, DEI raises no argument against confirmation of the award.

F.2d 108, 110-11 (2d Cir. 1993) (reviewing contents of arbitration award to determine whether "the district court properly interpreted the award" in ordering confirmation).

DEI bases its interpretation of the arbitration award, in part, on the contents of the agreement between Wartsila and DEI.[4] According to DEI, the tribunal had in mind the contract's withholding and setoff provisions when making the final award, such that DEI would be allowed to set off the value of any future arbitration claims it had against the amount it owed Wartsila under the arbitration award. Because the value attached by DEI to its claims still pending in the new arbitration is greater than the amount awarded to Wartsila in the current award, DEI argues that the award does not contemplate a current payment from DEI to Wartsila.

In its conclusion, the Final Award plainly states that, "Duke must pay Wartsila." Focusing on other aspects of the award, DEI argues that this does not mean the tribunal contemplated immediate payment by DEI. First, DEI notes that the arbitration tribunal allowed DEI to withdraw certain claims from this arbitration in order to reserve them for a later, anticipated arbitration. Because the tribunal allowed claims to be withdrawn, and because the tribunal was aware of contract sections 6.9, 6.10 and 6.13, DEI argues that the tribunal could not have intended DEI to make immediate payment on the award. Instead, according to DEI, the panel intended that DEI would be able to set off, against

---

[4] The agreement vested in the ICC arbitration tribunal the authority to resolve disputes arising out of and relating to the agreement. Courts accord strong deference towards an arbitrator's interpretation of a contract. See Executone Info Sys., Inc. v. Davis, 26 F.3d 1314, 1320 (5th Cir. 1994) (recognizing that a court must sustain an arbitration award even where the court disagrees with an arbitrator's interpretation of the underlying contract). Furthermore, DEI does not raise any argument that would require us to go behind the arbitration tribunal's award to engage in our own interpretation of the contract, as if for example, DEI had claimed that the arbitrators exceeded their authority under the contract in issuing the award. See, e.g., Executone, 26 F.3d at 1324-29 (examining agreement to determine whether arbitrator's decision "draws its essence" from the contract). In this case, we determine only whether the district court's order and judgment properly enforced the award as written. See Folkway Music, 989 F.2d at 111.

any award made by the panel, the alleged value of the withdrawn claims yet to be arbitrated. The panel allowed DEI to withdraw and reserve claims under Article 30(4) of the ICC Rules. However, the fact that the panel allowed DEI to withdraw claims does not necessarily strengthen DEI's argument. DEI's argument assumes that the arbitration panel interpreted the contract's withholding and setoff provisions consistent with DEI's own interpretation. The panel's award does not support this assumption.

In arguing that the panel interpreted the contract as allowing DEI to set off amounts against payment of its award, DEI focuses our attention on paragraph forty seven of the Final Award, wherein the arbitration panel reproduced its letter to the parties written July 15, 2005. The July 15 letter was sent to the parties as part of the tribunal's consideration of a third round of hearings)) the tribunal knew at this point that DEI wished to withdraw some of its claims. The letter stated in pertinent part:

> In the absence of any remaining claims, the Tribunal would normally make these Awards as Final Awards. However, on the basis that the parties wish the Tribunal to remain constituted to deal with further new claims in 2006, the Tribunal would be prepared to make the Award in Arbitration 12682/KGA/CCO [i.e., the second round of hearings] as a Second Partial Award but only on the basis that it contained an Award of final payment to one party of the other arising out of the current remaining claims and counterclaims including costs. The Second Partial Award would then require one party to pay the other party. [DEI] raised the possibility that it may wish to withhold sums against any such Award. The Tribunal does not consider that it can or should become involved with subsequent matters of enforcement of the Award or entitlement to set-off. Such issues are for the parties and, if payment is not made, will depend upon the laws of the country in which the Award is to be enforced.

DEI notes that the arbitration panel expressly abstained from deciding the legal question of whether DEI was entitled to withhold sums against the panel's award. DEI is correct, in that the tribunal noted that it did not have the

authority to enforce the award and that enforcement would depend upon, in this case, U.S. law concerning enforcement of international arbitration awards. However, the tribunal's July 15 letter undermines DEI's position as it concerns the tribunal's understanding of the effect of the contract's setoff provisions on the tribunal's authority to issue an award requiring payment. In the July 15 letter, the tribunal expressly states that its award arising from the second round of hearings would "contain an Award of final payment to one party or the other arising out of the current remaining claims and counterclaims, including costs" and would "require one party to pay the other party." The tribunal intended this to be so even if its award had been merely a "Second Partial Award." However, because the tribunal did not consider any further claims, it instead issued a Final Award encompassing all of the claims it had heard up to that point. Counter to DEI's argument, the July 15 letter suggests that the tribunal understood its authority as including the ability to issue an award which required payment from one party to the other at the close of the arbitration proceeding.

When calculating the amount of the award, the tribunal took into account any deductions that DEI was allowed to make based on its ability to withhold payment for work not remedied. Where the tribunal found Wartsila's work to be unremedied, it reduced the amount owed by DEI based on the cost to remedy Wartsila's defective work. DEI argues that the tribunal's references to contract sections 6.9 and 6.10 in its calculation of the award amount suggest that the panel recognized DEI's right to withhold. However, the tribunal's award calculation undercuts DEI's position. As indicated above, Section 6.10 allows DEI to withhold payment on disputed invoice amounts in order to protect itself from loss for work that has not been remedied. The tribunal's references to Section 6.10 and DEI's ability to withhold amounts for unremedied work do not support DEI's claim that it could withhold payment or make setoffs against the

tribunal's final arbitral award. Even after taking into account DEI's ability to withhold invoice amounts, the tribunal issued an award requiring DEI to pay Wartsila.

Instead of supporting DEI's ability to set off future claims against the award amount, the award reflects the tribunal's intent to resolve the specific disputes then before it and issue a final award such that a monetary payment would be made regarding those specific disputes. The fact that DEI was allowed to withdraw claims and reserve them for a later arbitration does not provide guidance as to whether the panel understood those future claims to provide a setoff amount against any award it may issue. The mention of DEI's right to setoff found in the tribunal's July 15 letter to the parties suggests that the arbitration panel did not see setoff as an impediment to its issuing an award requiring payment. The tribunal's references to DEI's contractual right to withhold invoice amounts suggest that despite DEI's right to withhold, it still must pay Wartsila the final award amount. Finally, the panel's unambiguous mandate that "Duke pay Wartsila" suggests that the tribunal required payment, with no strings attached to enforcement of the award. Therefore, the district court's order and judgment were consistent with the award as written. Nothing in the tribunal's award prevented the district court from confirming and enforcing the award by reducing it to a money judgment in favor of Wartsila.

B

Though we find that the award did not require the district court to issue a stay, DEI alternatively argues that the district court should have exercised its discretion to grant a stay of enforcement. In seeking a discretionary stay, DEI relies upon the First Circuit's decision in Hewlett-Packard Co., Inc. v. Berg, 61 F.3d at 105-06. In Berg, the First Circuit recognized that certain equitable considerations could lead a district court to exercise its inherent authority to grant a stay of enforcement. See id. at 106. Without deciding whether we would

recognize the same authority on the part of the district court, we note that DEI's request for a stay does not fall within the limited parameters described in Berg.

In Berg, Hewlett-Packard was involved in arbitration proceedings arising out of two separate contracts, one from 1982 and one from 1984, between its subsidiary, Apollo Computer, and Dicoscan. By the time of arbitration, Dicoscan had become insolvent. The tribunal arbitrated the claims arising out of the 1984 contract. The arbitrators did not allow Hewlett-Packard to bring its claims from the 1982 contract as counterclaims in the same arbitration proceeding. Arbitration of the 1984 disputes resulted in an award against Apollo without any determination of its claims under the 1982 agreement. After the district court confirmed the award, Hewlett-Packard appealed the district court's decision to "confirm the award in full" rather than grant a stay of the confirmation pending the results of arbitration of the 1982-contract disputes. Id. at 105. The district court held that it did not have authority to grant a stay because of the limitations imposed by the New York Convention. Hewlett-Packard argued that it should not have to pay the full amount of the 1984 award because of Dicoscan's insolvency and the minimal likelihood that Hewlett-Packard would recover anything on its claims from the 1982 agreement, even if the claims prove meritorious. The First Circuit determined that "Dicoscan's bankruptcy gives Hewlett-Packard a very substantial prudential argument" in support of a stay. Id. Because the district court "acted under a misapprehension of its authority" the appeals court vacated its decision and remanded for reconsideration of the stay issue. Id. at 106. Still, the First Circuit cautioned that "a stay of confirmation should not be lightly granted," because "[a] central purpose of the Convention. . . was to expedite the recognition of foreign arbitral awards with a minimum of judicial interference." Id.

Even were we to recognize the inherent authority of the district court to issue a stay, DEI does not present the same "prudential" case that existed in

Berg.  While DEI has outstanding arbitration claims against Wartsila, it has presented no evidence of Wartsila's insolvence or that DEI will have trouble recovering on its claims.  Further, in Berg, the First Circuit noted that the arbitration panel prevented Hewlett-Packard from asserting its claims in the same arbitration.  Id. at 105.  In this case, DEI unilaterally withdrew its claims in order to reserve them for a later proceeding.  Therefore, the district court did not abuse its discretion in refusing to grant DEI's motion for stay of enforcement on the grounds laid out in Hewlett-Packard v. Berg.

IV

The district court properly interpreted the tribunal's award when it determined that the award contemplated summary confirmation and enforcement by the court.  The district court did not abuse its discretion in denying DEI's request for a stay of enforcement.  Accordingly, we AFFIRM the judgment of the district court.