**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 9, 2009

Charles R. Fulbruge III
Clerk

No. 08-20247

SAIPEM AMERICA

Plaintiff - Appellant

v.

WELLINGTON UNDERWRITING AGENCIES LIMITED; XCHANGING
CLAIMS SERVICES; HOUSTON CASUALTY COMPANY; NAVIGATORS
INSURANCE SERVICES OF NEW YORK; INTERNATIONAL INSURANCE
COMPANY OF HANNOVER, LONDON; AXIS SPECIALTY LIMITED OF
BERMUDA; GREAT LAKES REINSURANCE (UK) PLC; NOBLE ENERGY
MEDITERRANEAN, LTD

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-cv-3080

Before O'CONNOR[*], Associate Justice (Ret.), and WIENER and STEWART,
Circuit Judges.

PER CURIAM[**]

---

[*] The Honorable Sandra Day O'Connor, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. § 294(a).

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The appeal arose from damage caused to an offshore platform while it was being transported from Texas to an offshore location in Israel. The parties presented this dispute to arbitration. The arbitration tribunal found Saipem America, Inc. ("Saipem") directly liable for negligent misrepresentation, awarded the Underwriters more than $1 million in actual damages and $399,000 in attorneys' fees, and split the costs of arbitration equally between the parties. Saipem brought suit in federal district court seeking to vacate the arbitration award. The district court affirmed the award. For the reasons discussed herein, we AFFIRM.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of this case are not in dispute. Samedan Mediterranean Sea ("Samedan"), later known as Noble Energy Mediterranean, Ltd. (hereinafter "Samedan"), contracted with Heerema Marine Contractors Nederland B.V. ("Heerema") for the transportation and installation of Samedan's offshore platform from Texas to Israel. The contract between Heerema and Samedan required Heerema to obtain insurance for the load-out, transportation, and installation of the platform. Heerema obtained the required insurance from several underwriters ("Underwriters"), naming Heerema and Samedan as principal assureds.

While in transport in December 2002, the platform received extensive damage when the platform's main crane broke free from its boom rest. The company responsible for towage and installation of the platform also sustained damages. Heerema and Samedan filed insurance claims with the Underwriters for the damage. The Underwriters then made claims against Saipem, asserting that Saipem was liable for the platform damage based on two contracts: one

contract was between Saipem and Samedan under which Saipem was to serve as Samedan's Certified Verification Agent ("CVA") and the other contract was a marine warranty surveyor subcontract between Saipem and Heerema under which Saipem was to serve as a marine warranty surveyor. Samedan also made claims against Saipem because of the insurance policy's deductible; Heerema did not bring a claim against Saipem.

The subcontract between Saipem and Heerema (the "Subcontract") provides the following regarding arbitration:

> Any dispute arising out of or in connection with this Subcontract which cannot be amicably settled shall be referred to arbitration in The Hague, The Netherlands, in accordance with the Rules of the International Chamber of Commerce currently in force. Any settlement agreement or arbitral award shall be final and binding upon Parties.

Pursuant to the Subcontract's arbitration provision, Samedan and the Underwriters requested arbitration.[1] They argued that Saipem's performance as CVA and marine warranty surveyor was inadequate and breached the contract with Samedan and the Subcontract with Heerema. Samedan and the Underwriters sought declarations that Saipem breached its contracts and fiduciary duties with them and with Heerema; that Saipem was negligent, professionally or otherwise; and that Saipem was guilty of negligent misrepresentation. The negligent misrepresentation claim was based on Saipem's issuance of a certificate of approval that the platform could be safely towed from Texas to Israel. All parties sought attorneys' fees.

---

[1] Samedan and the Underwriters acknowledge that they requested arbitration, but they contend that they requested arbitration only after they were compelled to do so by Saipem after suit was filed in Nueces County District Court.

The arbitral tribunal concluded that Saipem's contracts with both Samedan and Heerema contain valid indemnity provisions, but the provisions create a "circularity of indemnity" that effectively extinguished the Underwriters subrogation claims against Saipem. The tribunal found that because Saipem had no direct contractual relationship with the Underwriters, the Underwriters could maintain a claim of negligent misrepresentation. The tribunal issued an award finding Saipem liable for damage to the platform. As a result of its finding on the negligent misrepresentation claim, the tribunal found Saipem liable to the Underwriters for actual damages in the amount of $1,110,657, attorneys' fees and expenses in the amount of $399,000, and 50% of the costs of arbitration in the amount of $105,000.[2] The district court affirmed the award in all respects. Saipem appeals.

## II. DISCUSSION

### A. Standard of Review

"This court reviews a district court's confirmation of an arbitration award *de novo*, using the same standards as the district court." *Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*, 487 F.3d 255, 258 (5th Cir. 2007) (per curiam). Our review of the arbitration award is "'exceedingly deferential,'" and the award must be upheld if it "'is rationally inferable from the letter or purpose of the underlying agreement.'" *Id.* (quoting *Kergosien v. Ocean Energy, Inc.*, 390 F.3d

---

[2] The district court incorrectly states that the tribunal found Saipem liable for $210,000 in costs, the total cost of the arbitration. Rather, the tribunal concluded that Saipem should bear "50% of such costs." Neither party has raised an issue on costs, and the district court's misstatement has no bearing on the issues on appeal.

346, 352 (5th Cir. 2004) and *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164-65 (5th Cir. 1998)).

This court previously recognized both statutory and common law grounds for vacating an arbitration award.[3] The parties dispute whether the Supreme Court's recent decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396 (2008), forecloses this court's review of the arbitration award on nonstatutory grounds. After oral argument, a panel of this court addressed that question in *Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349 (5th Cir. 2009). In *Citgroup Global*, the court stated that "manifest disregard of the law as an independent, nonstatutory ground for setting aside an award must be abandoned and rejected." *Id*. at 358. The panel in *Citigroup Global* interpreted *Hall Street* as restricting grounds for vacatur of an arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, exclusively to statutory provisions, and it held that *Hall Street* effectively overruled Fifth Circuit precedent holding that nonstatutory grounds may support vacatur of an arbitration award. *Id*. at 350; *see id*. at 358 ("To the extent that our previous precedent holds that nonstatutory grounds may support the vacatur of an

---

[3] The common law grounds were based on awards that were contrary to public policy or displayed a manifest disregard of the law. *See Sarofim v. Trust Co. of the West*, 440 F.3d 213, 216 (5th Cir. 2006) (citation omitted). A party who sought to vacate an arbitration award based on a public policy had to demonstrate that the public policy was "'explicit, well defined, and dominant.'" *Id*. at 219 (quoting *Prestige Ford v. Ford Deal Computer Servs., Inc.*, 324 F.3d 391, 396 (5th Cir. 2003)). To vacate an arbitration award under the manifest disregard standard, (1) the tribunal's "error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator," (2) the arbitrator must have appreciated the existence of a clearly governing principle but ignored it, and (3) the award must result in a "significant injustice." *American Laser Vision, P.A.*, 487 F.3d at 259 (citations omitted).

arbitration award, it is hereby overruled."). Accordingly, we may vacate the arbitration award in this case only if a statutory ground supports the vacatur.

Under 9 U.S.C. § 10(a)(4), this court may vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." Under § 11(b), this court may modify an arbitration award "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." 9 U.S.C. § 11(b). We resolve any doubts concerning the scope of arbitration in favor of arbitration. *American Laser Vision, P.A.*, 487 F.3d at 259.

### B. Negligence Claim

Saipem argues that the tribunal exceeded its authority because its award is solely for a claim for negligence, a claim upon which the contract has no applicability or bearing, and therefore, it is not rationally inferable from the contract. We must look to the contract and the parties' submissions to the tribunal to determine whether the parties agreed to submit an issue to the arbitrator. *See Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980) ("[O]nce the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority."). The parties agreed to and submitted Terms of Reference to the arbitral tribunal, which provided, *inter alia*, a summary of the parties' positions and the relief requested by the parties. Samedan and the Underwriters submitted the claim of negligent misrepresentation before the tribunal, and

Saipem took the position that the negligence claims were barred. Saipem separately argued that it was not negligent, as it conducted its work in a professional and diligent manner in accordance with industry practice.

Further, the parties agreed to the following in the Terms of Reference:

The Arbitral Tribunal is to resolve, by a preponderance of the evidence all issues of fact and law that shall arise from the claims and pleadings as duly submitted by the parties, including, but not limited to, the following issues as well as any additional issues of fact or law which the Arbitral Tribunal, in its own discretion, may deem necessary to decide upon for the purpose of rendering any Arbitral Award . . . .

Hence, the parties agreed that the tribunal could decide "any additional issues . . . at its own discretion." In light of the parties' submissions and grant of broad authority to the tribunal, we cannot find that the tribunal exceeded its authority. *See Piggly Wiggly Operators' Warehouse, Inc.*, 611 F.2d at 584.

Saipem relies upon Texas Civil Practice and Remedies Code § 171.048(c) to argue that attorneys' fees are specifically prohibited in this situation. In this international commercial arbitration, § 171.048 does not apply. Section 172.001(d) provides that "[e]xcept as provided by this subsection, this chapter supersedes Subchapters B and C, Chapter 171, with respect to international commercial arbitration and conciliation." TEX. CIV. PRAC. & REM. CODE § 172.001(d) (footnotes omitted). Section 172.145 provides the tribunal with discretion to award costs, and such costs may include legal fees and expenses. § 172.145(a) & (b)(1)(B). Therefore, statutory authority exists for the award of attorneys' fees in this case.

Further, after placing these issues before the tribunal, Samedan and the Underwriters requested, *inter alia*, "[a]n Award that all costs of the requested arbitration be borne by [Saipem], including arbitrators' fees, counselor's fees and related costs." Saipem also requested "an award of the costs of the arbitration, including its legal and expert fees and related costs." Because the parties submitted the issue of attorneys' fees to the tribunal in the Terms of Reference, the tribunal properly considered the issue. We find that the arbitrators did not exceed their powers or award upon a matter not submitted to them.

### C.   *Indemnity*

Saipem argues that the tribunal found that Saipem was entitled to indemnity, but it failed to award Saipem indemnity. Essentially, Saipem argues that the tribunal violated § 10(a)(4) by not issuing a mutual, final, and definite award upon the subject matter.

The tribunal stated the following regarding indemnity:

> We find and conclude that both the Samedan and Heerema contracts with [Saipem] contain valid indemnity provisions. . . . These indemnity provisions satisfy both the "express negligence" rule of Texas law and the "clear and unequivocal" test of United States maritime law. Such provisions create a "circularity of indemnity" that effectively extinguishes the [Underwriters'] subrogation claims against [Saipem]. . . .

Neither party has provided the contract between Samedan and Saipem, which contains the other indemnity provision. At oral argument, Saipem confirmed that it is not part of the record on appeal. We find no basis to vacate the award based on the tribunal's failure to award Saipem indemnity. The arbitral tribunal made detailed findings which are well-supported by governing law, and

it did not exceed its powers or so imperfectly execute them that a mutual, final, and definite award was not made.

## III.   CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment confirming the arbitration award.