# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 10, 2013

Nos. 05-51666

Lyle W. Cayce
Clerk

HAMSTEIN CUMBERLAND MUSIC GROUP; HOWLIN' HITS MUSIC INC; HAMSTEIN CUMBERLAND MUSIC CO; BH ASSOCIATES INC, d/b/a Hamstein Music Co; BILL HAM

Plaintiffs - Appellees-Cross-Appellants

v.

JERRY LYNN WILLIAMS, individually and d/b/a Urge Music and His Majest Jerr Music

Defendant

ROBERT S FARRIS, in his capacity as personal representative of the Estate of Jerry Lynn Williams

Defendant - Appellant-Cross-Appellee

Appeals from the United States District Court
for the Western District of Texas

Before BARKSDALE, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the arbitration of a royalty dispute between Hamstein Cumberland Music Group ("Hamstein"), a manager, administrator,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 05-51666

and publisher of songwriters and recording artists, and the estate of Jerry Lynn Williams ("Williams"), a songwriter, composer, recording artist, and performer who died on November 25, 2005. At issue was the amount of money Williams owed Hamstein for certain royalties Williams received for songs that previously had been administered by Hamstein. The arbitrator chosen by the parties decided in favor of Hamstein, awarding it $1,149,140.19, and Hamstein applied to the district court for an order confirming the award. The district court, however, concluded that the arbitrator was not authorized to issue parts of the award and consequently reduced it to $564,162.51.

As relevant here, § 10 of the Federal Arbitration Act ("FAA") permits a district court to vacate an arbitration award if "the arbitrator[] w[as] guilty of misconduct in refusing to . . . hear evidence pertinent and material to the controversy" or "the arbitrator[] exceeded [his] powers." 9 U.S.C. § 10(a)(3), (a)(4). We conclude that Williams, as the party resisting confirmation, failed to show why modification or vacatur was warranted based on one of the limited grounds enumerated in the FAA. Accordingly, the district court erred in refusing to confirm the award in its entirety. We therefore VACATE the district court's judgment and REMAND the case to it with the instruction to confirm the arbitrator's award in its entirety.

## BACKGROUND

Williams was a songwriter of some notoriety having written songs for a number of notable artists including Eric Clapton, Bonnie Raitt, and B.B. King.[1] Hamstein operated a music-publishing business that handled up to 10,000

---

[1] Much of the factual detail regarding Hamstein and William's business relationship comes from *Hamstein Cumberland Music Group v. Estate of Williams*, in which Hamstein brought suit against Williams's ex-wife, Lorelei Williams ("Lorelei"), alleging that Williams, as part of his divorce settlement, fraudulently transferred assets to Lorelei in order to shield those assets from Hamstein and the arbitration proceeding. *See* No. 06-cv-GKF-PJC, 2011 WL 4628089, at *1-11 (N.D. Okla. Sept. 30, 2011).

copyrights between the late 1980s and December 2001.  Effective January 1, 1989, Hamstein and Williams entered into a co-publishing agreement under which Hamstein, as administrator, collected royalties on Williams's songs and accounted to Williams for his share of the revenues generated.[2]  The agreement terminated by its own terms at the end of 1993, but the parties entered into another co-publishing agreement, dated January 1, 1994, which was effective until December 1998.

By 1998, the relationship between Hamstein and Williams had "seriously deteriorated," and Hamstein ultimately brought suit, alleging breach of the 1994 agreement, in the U.S. District Court for the Western District of Texas.  The parties agreed to mediate their dispute and, as a result of the mediation process, executed a Final Settlement Agreement and Mutual Release ("the Settlement") effective March 31, 2000, under which Hamstein paid Williams $2,100,000, which represented the share of royalties Williams claimed he was owed, and conveyed "all Hamstein's rights, title and interest in and to each and every composition delivered by, conveyed, sold or transferred by Williams to Hamstein from January 1, 1989 to [March 31, 2000]."  However, the Settlement also provided that Williams "waive[d] any and all rights or claims of ownership to any and all royalties generated prior to [March 31, 2000] . . . which [were] received at any time by . . . Williams" and assigned to Hamstein all rights to Williams's foreign royalties generated prior to January 1, 1999.  Thus, although Williams's intellectual-property rights were fully restored to him pursuant to the Settlement, any royalties he received after the Settlement's effective date for songs that had previously been administered by Hamstein would be paid to

---

[2] "Music publishing involves 'exploiting' a composition to the extent it produces as much revenue as possible, for example by getting a song recorded by a major recording artist.  An element of the music publishing business is 'administration,' the function focused on collecting royalties and accounting and paying to songwriters their share of the revenues generated by the compositions." *Estate of Williams*, 2011 WL 4628089, at *2.

Hamstein. Accordingly, the Settlement provided that Williams would account for and pay to Hamstein any of the royalties owed to Hamstein and authorized Hamstein to audit Williams's books for certain periods.

Ultimately, Hamstein determined that Williams failed to comply with his obligations under the Settlement and so initiated arbitration, pursuant to the Settlement's arbitration clause, by serving a demand for arbitration on Williams. Williams refused to participate in the arbitration and instead filed a countersuit in Oklahoma state court, seeking to enjoin the arbitration and declare the arbitration clause void.[3]  On March 11, 2003, however, Hamstein filed a complaint to compel arbitration against Williams in the U.S. District Court for the Western District of Texas, and on August 14, 2003 the district court compelled Williams to arbitrate and enjoined him from prosecuting the Oklahoma suit.

Williams participated in the arbitration through counsel but consistently failed to respond to discovery ordered by the arbitrator, which included refusing to produce documents, which, Hamstein said, would show royalties that Williams had received following the Settlement's effective date but that should have been paid to Hamstein and which, because of the nature of Hamstein's claim, only Williams possessed. Consequently, Hamstein, in 2004, moved for sanctions against Williams for failure to respond to multiple written requests for information and documents first sent three years earlier, in November 2001. In response, Williams cross-moved for sanctions against Hamstein on precisely the same basis, namely claiming that Williams had requested discovery from Hamstein to which Hamstein had failed to respond. In fact, Williams argued that Hamstein's failure to respond to his discovery requests warranted "death

---

[3] The Oklahoma suit was eventually removed to federal court and dismissed.

penalty" sanctions against Hamstein, in other words granting judgment to Williams on his claims against Hamstein and awarding Williams attorneys' fees.

On December 28, 2004, the arbitrator, agreeing with Hamstein that Williams had consistently and without justification failed to respond to ordered discovery, awarded Hamstein $500,000 in sanctions against Williams. Further, the arbitrator ordered Williams to respond to all interrogatories by January 15, 2005 and to produce all responsive documents by January 22, 2005 and warned: "If [Williams] fails to provide all discovery responses ordered herein, [Hamstein] may present evidence of estimated royalties on or before February 4, 2005 at 9:00 a.m. before the arbitrator . . . and [Williams] may not present evidence controverting such estimate." In other words, the arbitrator warned Williams that if he failed to comply with the arbitrator's discovery orders, Williams would not be permitted to present evidence that was not properly disclosed during discovery, which would effectively permit Hamstein to base its damages claim on estimates of the royalties Williams was said to owe Hamstein and would disallow Williams from rebutting these estimates with his own records unless they were previously produced.

At the arbitration hearing, Hamstein presented an expert witness, Ali Adawiya ("Adawiya"), the head and partner of a royalty-auditing firm, who testified, based on estimates, that Williams owed Hamstein $634,641.44 worth of royalties, including prejudgment interest. In particular, Adawiya testified that a complete audit of the royalties Williams owed to Hamstein could not be completed and instead estimated the amount of royalties Williams owed to Hamstein by reference to "past royalty accounting." Williams was permitted to cross-examine Adawiya and present the testimony of his own expert. Williams, however, was barred from introducing evidence of the royalties he had in fact received based on his failure to comply with the arbitrator's discovery orders. The arbitrator evidently credited Hamstein's expert over Williams's and

subsequently issued an award in favor of Hamstein, in the amount of $1,149,140.19.

On receipt of the award, Hamstein moved in the district court to confirm the award. In response, Williams moved to dismiss the case for lack of subject-matter jurisdiction but did not explicitly move the court to vacate or modify the arbitrator's award. The district court *sua sponte* reduced the award and entered final judgment in favor of Hamstein in the amount of $564,162.51. The district court reasoned that although the Settlement authorized the award of attorneys' fees, the arbitrator had no authority to award sanctions. Therefore, the district court declined to confirm the $500,000 awarded for sanctions and attorneys' fees as well as $76,301.43 that the district court felt represented prejudgment interest on the sanctions award and arbitration costs. Although Williams subsequently filed an objection to the award and, for the first time, asked the district court to modify or vacate the award, the district court denied Williams's objection as moot.

Both parties timely appealed. On appeal, Williams challenges confirmation of the award in the amount of $564,162.51, and Hamstein challenges the district court's refusal to confirm the award in its entirety.

## JURISDICTION

On December 13, 2003, Hamstein initiated arbitration proceedings, pursuant to the terms of the Settlement, by serving a demand for arbitration on Williams. Williams, however, generally refused to participate and instead filed the Oklahoma suit to enjoin the arbitration and declare the Settlement's arbitration clause void. Accordingly, on March 11, 2002, Hamstein filed a complaint to compel arbitration against Williams in the district court. The district court properly exercised subject-matter jurisdiction because complete diversity exists and 28 U.S.C. § 1332(a)'s amount-in-controversy requirement is

No. 05-51666

satisfied. *See* 28 U.S.C. § 1332(a). After confirmation of the final award, we exercised jurisdiction under 28 U.S.C. § 1291. *See* 28 U.S.C. § 1291.

Williams's challenge to the district court's exercise of subject-matter jurisdiction is meritless. Williams asserts that FAA § 9—which requires that the parties agree "that a judgment of the court shall be entered upon the award"—somehow deprived the district court of the subject-matter jurisdiction it possessed under 28 U.S.C. § 1332(a). However, it is undisputed that "the FAA is not an independent grant of federal jurisdiction." *Smith v. Rush Retail Ctrs., Inc.*, 360 F.3d 504, 505 (5th Cir. 2004). Given that the parties do not dispute that § 1332(a)'s requirements are met, it is unclear how FAA § 9 would divest the district court of the subject-matter jurisdiction it already possessed. We therefore reject Williams's argument that the district court lacked subject-matter jurisdiction over the case.

## STANDARD OF REVIEW

We "review[] a district court's confirmation of an arbitration award *de novo*, using the same standards as the district court." *Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*, 487 F.3d 255, 258 (5th Cir. 2007), *overruled on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584-86 (2008). Those "same standards" are derived from the text of the FAA. However, "review of the underlying award is exceedingly deferential." *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007) (internal quotation marks omitted), *overruled on other grounds by Hall St.*, 552 U.S. at 584-86. In fact, a federal court may modify or vacate an arbitration award only if one of the grounds enumerated in FAA §§ 10 or 11 is satisfied. *See* 9 U.S.C. §§ 9, 10; *Hall St.*, 552 U.S. at 582-84.

No. 05-51666

## DISCUSSION

### A.

Williams argues that the arbitrator was not empowered to issue sanctions and therefore exceeded his authority within the meaning of FAA § 10(a)(4).[4] We disagree. First, arbitrators enjoy inherent authority to police the arbitration process and fashion appropriate remedies to effectuate this authority, including with respect to conducting discovery and sanctioning failure to abide by ordered disclosures. *See Forsythe Int'l, S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1023 n.8 (5th Cir. 1990). Second, Williams ignores his own conduct, namely cross-moving for sanctions against Hamstein in response to Hamstein's motion for sanctions against Williams and for the exact same reason that Hamstein moved for sanctions in the first place—Williams claimed that Hamstein had failed to respond to discovery that *he* had requested of Hamstein. The scope of an arbitrator's authority is a function of *both* the arbitration agreement *and* the parties' submissions, which include both formal, written submission agreements and merely asking the arbitrator to decide an issue. *See Executone Info. Sys. Inc. v. Davis*, 26 F.3d 1314, 1323 (5th Cir. 1994); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union*, 611 F.2d 580, 583-84 (5th Cir. 1980). If the parties are permitted to modify the scope of their contractual agreement by submitting additional issues to the arbitrator, then surely the parties may, jointly, empower the arbitrator to issue certain sanctions. Therefore, even assuming that the arbitrator lacked the authority to issue sanctions based solely on the Settlement and his inherent authority to police the arbitration process, the parties' decision to move for

---

[4] In his reply brief, Williams raised a second argument—that by refusing to hear evidence material to his case, the arbitrator denied him a fundamentally fair hearing in contravention of FAA § 10(a)(3). Because Williams's fundamental-fairness argument was raised for the first time in his reply brief, it is waived. *See Medina Cnty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 702 (5th Cir. 2010).

sanctions against one another—in fact, Williams reasoned that he was entitled to "death penalty" sanctions because of Hamstein's failure to respond to requested discovery—reveals that both parties sought to confer that power on the arbitrator. Accordingly, we conclude that the arbitrator did not exceed his authority in sanctioning Williams.

## B.

Finally, Hamstein complains that the district court erred by refusing to confirm the award in its entirety. We agree. The Supreme Court has noted that FAA § 9's "provision for judicial confirmation carries no hint of flexibility." *Hall St.*, 552 U.S. at 587. Thus,

> [o]n application for an order confirming the arbitration award, the court "must grant" the order "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." There is nothing malleable about "must grant," which unequivocally tells courts to grant confirmation in all cases, except when one of the "prescribed" exceptions applies.

*Id.* Given that §§ 10 and 11 of the FAA provide the exclusive means to modify or vacate an arbitration award, *id.* at 578, the district court, faced with Hamstein's motion to confirm the award, was required to grant an order of confirmation absent recourse to one of the seven, narrow grounds for modification or vacatur found in §§ 10 and 11.

Williams argued that the arbitrator exceeded his authority within the meaning of § 10(a)(4) both by imposing monetary sanctions and by prohibiting Williams from establishing damages based on evidence not produced during discovery. The district court decreed that the arbitrator exceeded his authority in awarding $500,000 to Hamstein for sanctions, costs, and attorneys' fees as well as $76,301.43 that the district court found represented prejudgment interest on the sanctions award and arbitration costs. The district court rejected

No. 05-51666

Williams's arguments for further revisions of the award and confirmed a final award of $564,162.51 to Hamstein.

Given our conclusion that the arbitrator did not exceed his authority in sanctioning Williams for noncompliance with his discovery obligations, we conclude that Williams has not demonstrated that the arbitrator exceeded his authority in any respect as required by FAA § 10; that the arbitrator's award must be confirmed in its entirety; that the district court's judgment is vacated; and that the case is remanded with our instruction to the district court to render judgment confirming the arbitrator's award in its entirety with post-judgment interest from the date of that court's original judgment herein.

It is so ordered.